(49 Misc. Rep. 607.)

### PEOPLE ex rel. COHEN v. BINGHAM.

(Supreme Court, Special Term, New York County. February, 1906.)

MUNICIPAL CORPORATIONS—PROMOTION OF POLICEMEN.

A motion for peremptory mandamus, directing the police commissioner to recognize relator as detective sergeant, will be denied where the evidence showed that relator was assigned to detective duty for a certain period, when he was promoted to roundsman and assigned to regular police duty, and that at the time he was temporarily assigned to detective duty the position of detective sergeant could be attained only upon examination and promotion, according to the rules of the civil service commission.

Application by the people, on the relation of one Cohen, for a writ of mandamus against one Bingham. Writ denied.

John J. Delany, Corp. Counsel, for defendant.

BLANCHARD, J. This is a motion for a peremptory mandamus directing the police commissioner to recognize and grade the relator as detective sergeant. The affidavits show that in February, 1905, by an assignment, the temporary character of which was duly explained to the relator, he was assigned to detective duty in Brooklyn Borough headquarters squad, and continued to perform detective duty until September, 1905, when he was promoted to roundsman and assigned to regular police duty. The laches of the relator and the temporary character of his assignment might afford grounds for denying his motion. People ex rel. Boyle v. Greene, 87 App. Div. 421, 84 N. Y. Supp. 484, affirmed 180 N. Y. 504, 72 N. E. 1147. The decision may be rested on the broader ground, however, that at the time the relator was temporarily assigned to detective duty the position of detective sergeant could be attained only upon examination and promotion in accordance with the rules of the civil service commission. People ex rel. Gilhooly v. McAdoo, 108 App. Div. 1, 95 N. Y. Supp. 400; People ex rel. Maher v. Green, N. Y. Law J. Dec. 3, 1903, affirmed 92 App. Div. 621, 86 N. Y. Supp. 1143; Id., 179 N. Y. 563, 71 N. E. 1137. Accordingly the motion is denied.

Motion denied.

---

### SEXTON v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. July 12, 1906.)

MASTER AND SERVANT—INJURIES TO THIRD PERSONS—RELATION OF PARTIES.

Where a locomotive belonging to a railroad company, and the crew operating the same, employed by the railroad company, was permanently engaged in switching on the premises of a third person, under the direction of his foreman, the railroad was not liable for the negligence of the crew operating the locomotive.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 1213, 1214.]

McLennan, P. J., dissenting.

Appeal from Trial Term, Monroe County.

Action by David Sexton, as administrator of the estate of Grace Sexton, deceased, against the New York Central & Hudson River Railroad Company. Verdict for plaintiff. From an order granting defendant a new trial, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

George H. Harris, for appellant.
Daniel M. Beach, for respondent.

NASH, J. Grace Sexton, plaintiff's intestate, a young girl 16 years of age, while walking on a railroad track in the yard of the blast furnace of the Corrigan & McKinney Company, at Charlotte, N. Y., was run down by a backing engine belonging to the defendant and killed. The accident occurred July 13, 1903, at about a quarter to 12 o'clock noon. The deceased, for upwards of 10 months preceding the accident, had been engaged in the duty, on alternative days, with a sister, of carrying to a brother employed in the blast furnace his dinner, and was returning from having carried it to him on the occasion of the accident. The yards of the Corrigan & McKinney Company were extensive. A main switch led from the Charlotte branch of the New York Central across the track of the Rome, Watertown & Ogdensburgh Railroad into the Corrigan yard, where it branched out into 8 or 10 switches, entirely upon the premises of, and used exclusively by, the Corrigan & McKinney Company. The deceased at the time she was struck by the engine was walking on the track on the main switch. She had taken a path which led to the main switch, and before going upon the switch she turned her head to the north, the direction where the engine was standing on what was known as the "coke track," about 250 feet distant, from which point she walked some 60 or 70 feet on the track before being struck by the engine. No bell was rung from the time the deceased looked in that direction, and no warning was given of the approach of the engine before the deceased was run down. Neither the engineer nor any of the engine crew knew that she had been struck until after the engine was stopped and her body was found under the tender. The engineer was watching as he ran the engine to see if any switch was placed wrong, and, observing a semaphore at the Rome, Watertown & Ogdensburgh and New York Central tracks, to see whether or not it was safe to cross the Rome, Watertown & Ogdensburgh tracks. The engine crew had orders to ring the bell when the engine was started, and while running in the yard where men were at work. The men were not working in the part of the yard where the accident occurred. The engine had been employed in the work of the Corrigan & McKinney Company exclusively for some weeks prior to the accident. It belonged to the defendant, and the crew were hired and paid by it, but subject to the orders of the Corrigan Company as to the work they were to do. In the operation of its business at the time of the accident the Corrigan Company employed two locomotives, one of which belonged to the company and the other to

the New York Central Railroad. The Corrigan engine was used to move kettles from the furnace, containing residue from the iron. The New York Central engine and crew were loaned to the Corrigan Company for its use for shifting cars and yard work, and taking cars to and from the yard loaded with freight, usually coke, from the New York Central Railroad, the Buffalo, Rochester & Pittsburgh and Rome, Watertown, & Ogdensburgh Railroads. The crew, although hired and paid by the defendant, were under the direction of the yard foreman of the Corrigan Company, to whom they reported in the morning, and to whom they looked for all instructions in regard to the work each day. At the time of the accident the crew had placed some cars for unloading coke, and were taking the engine to a place across the Rome, Watertown, & Ogdensburgh tracks to leave it and get their dinner.

The circumstances bring the case directly within the principle of McInerney v. Delaware & Hudson Canal Co., 151 N. Y. 411, the headnote of which is as follows:

"When a railroad company's engine crew run their engine upon a switch track on the premises of, and owned by, a private shipper of freight, at the request of the shipper, to couple and move cars for him on his track, under his orders, they discharge their duties to all his regular employés by notifying the shipper of their readiness to proceed with his work, and while engaged therein they are in law his servants; and when the shipper has been so notified, the railroad company will not be liable for a personal injury sustained by a regular employé of the shipper, caused by the omission of the engine crew to notify such employé of their intention to couple a car about which he was working."

In other words, the railroad company was held not liable under the circumstances for an injury to the plaintiff caused by the negligent act of its employés, who at the time of the accident were temporarily in the employ of and servants of the private shipper. Here the case for the nonliability of the railroad company is much stronger for the defendant. Instead of a single instance of the employment of the engine and crew of the railroad company to do the work of the shipper temporarily, the employment of the defendant's engine and crew was permanent. The defendant for the period in which it loaned the use of its engine and crew surrendered the entire control of its employés to the Corrigan Company. The railroad company could not, during such use, direct its employés as to the manner in which the work for the Corrigan Company should be performed, or make rules and regulations for their guidance. These were things entirely within the charge and control of the foreman of the Corrigan Company, directing the work and the manner in which it should be performed. As was said by Judge O'Brien in Higgins v. Western Union Telegraph Co., 156 N. Y. 75, 50 N. E. 500, 66 Am. St. Rep. 537, where the defendant's servant was temporarily operating an elevator under the direction of the plaintiff:

"Beyond the scope of his employment the servant is as much a stranger to his master as any third person, and the act of the servant, not done in the execution of the service for which he was engaged, cannot be regarded as the act of the master. And if the servant step aside from his master's business, for however short a time, to do an act not connected with such business, the relation of master and servant is for the time suspended, and an act of the servant during such interval is not to be attributed to the master. Here the

relation of master and servant between the conductor of the elevator and the de-fendant was suspended during the time that he was doing the work of the contractor in moving the plaintiff up and down in the shaft."

Other questions are presented, but in the view we take of the case it is not deemed necessary to discuss or pass upon them.

The judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur, except McLENNAN, P. J., who dissents.