## MURRAY v. WASATCH GRADING CO.

No. 4653.   Decided January 3, 1929.   (274 P. 940.)

*Bagley, Judd & Ray*, of Salt Lake City, for appellant.

*Willard Hanson* and *A. H. Hougaard*, both of Salt Lake City, for respondents.

HANSEN, J.

In this action the plaintiff recovered a judgment against the defendant for personal injuries sustained by him. Defendant appeals.

At the conclusion of the evidence the defendant requested the trial court to direct the jury to return a verdict in its favor. The court refused the request. Such refusal is assigned as error.

The principal question upon which the parties divide is whether the plaintiff was the employee of the defendant or of the Denver & Rio Grande Western Railroad Company at the time he was injured.

The following facts are established by the undisputed evidence: Defendant is, and at the time of the injury complained of was, a Utah corporation engaged in the construction of a state highway near Rio in Spanish Fork Canyon, Utah county, Utah. The highway which was being constructed by the defendant ran, for the most part, parallel with, and in some places very near to, the tracks of the Denver & Rio Grande Western Railroad Company. The highway was being constructed pursuant to a contract theretofore entered into by and between the defendant and the State Road Commission of Utah. The contract contains these provisions:

"When or where any direct or indirect damage or injury is done to public or private property by or on account of any act, omission,

neglect or misconduct in the execution of the work, or in consequence of the nonexecution thereof on the part of the Contractor [the contractor] shall restore, at his own expense, such property to a condition similar or equal to that existing before such damage or injury was done, by repairing, rebuilding or otherwise restoring, as may be directed, or he shall make good such damages or injury in an acceptable manner. In case of the failure on the part of the Contractor to restore such property, or make good such damage or injury, the Engineer may, upon forty-eight (48) hours' notice, proceed to repair, rebuild, or otherwise restore such property as may be deemed necessary and the cost thereof will be deducted from any moneys due or which may become due the Contractor under this contract."

"It is also understood and agreed that at any time when deemed necessary jointly by the state and the D. & R. G. R. R. Co., the contractor shall provide at his own expense such competent railroad employees as may be necessary for the proper protection of the railroad property and the traveling public."

"The contractor shall accept, insofar as the work covered by this contract is concerned, the provisions of the Workmen's Compensation Act of July 1, 1917, and any supplements or amendments thereto, which may hereafter be passed, and shall insure his liability thereunder."

The Denver & Rio Grande Western Railroad Company is a corporation engaged in operating a steam railroad in the states of Utah and Colorado.

In the construction of the highway, it was necessary at times to blast out rock and earth and to remove the same. Some of the material thus blasted was thrown upon the railroad track. At times the defendant's power shovel was operated so near the railroad track that the arm of the shovel swung over the track and earth and rock fell from the shovel over upon the track. It thus became necessary for the defendant company to be advised in advance of the time trains might be expected to pass along the railroad so that the track could be cleared to permit the free and uninterrupted passage of such trains. At the time of the injury complained of, the plaintiff was employed to keep in communication with the train dispatcher of the railroad company and to advise the defendant of the time that trains

might be expected to pass over the track in the vicinity of the place where defendant was at work. A telephone booth was erected near the place where the defendant company was engaged in constructing the highway for the purpose of communicating with the train dispatcher of the railroad company. The plaintiff communicated with the train dispatcher twice each day, at 6:45 a. m. and again at 1 p. m., and thus learned when trains would pass by the place where defendant was at work. This information was communicated to the defendant. If for any reason the track was not clear when a train was expected to arrive, it was a part of plaintiff's duty to flag the train and advise the train crew of the condition of the track. When not engaged in communicating with the train dispatcher or in flagging a train, it was the duty of the plaintiff to assist the defendant's employees in removing the rock and debris from the railroad track. The defendant had between 65 and 70 men engaged in the construction work on the highway. The plaintiff and the employees of the defendant assisted each other in clearing the debris from the track. The plaintiff, however, did not do any work upon the highway but confined his work to removing rock and debris from the railroad track. Plaintiff received the injury complained of in this action while he was assisting the employees of the defendant in removing from the railroad track some rocks that had been thrown upon the track by blasts that had been exploded in a nearby rock cut.

Before plaintiff began his employment in Spanish Fork Canyon he had been in the employ of the Denver & Rio Grande Western Railroad Company as a level man in a section crew. His duty as a level man was to keep the rails level when the section crew repaired the railroad track. On April 26, 1926, Daniel E. Crowley, a roadmaster for the Denver & Rio Grande Western Railroad Company, took the plaintiff and another man to the camp of the defendant company in Spanish Fork Canyon. Crowley informed the plaintiff that he was to board and sleep at the camp of the

defendant company; that he would be paid 38 cents per hour for 8 hours' work; that he would be required to work about 11 hours per day, and that he would be allowed his board and lodging for the extra 3 hours; that plaintiff's duties were to keep advised as to the train schedule by communicating with the train dispatcher of the railroad company, to flag the trains when necessary, and to assist the defendant company in removing material from the railroad track. The plaintiff entered upon this employment in the afternoon of April 26, 1926, and continued such employment until he was injured on May 11, 1926.

It was agreed between the defendant company and the railroad company that the railroad company should pay plaintiff 38 cents per hour, and that the defendant should reimburse the railroad company for the money thus paid to the plaintiff. It further appears that the defendant carried compensation insurance on its employees with the state insurance fund as required by the Workmen's Compensation Law (Comp. Laws Utah 1917, Title 49, p. 660, as amended by Laws Utah 1919, c. 63, p. 154). The defendant did not list the plaintiff as one of its employees with the State Industrial Commission.

On June 9, 1926, the defendant filed with the Industrial Commission of Utah a report of the injury to the plaintiff. The report was on a blank form used by the Industrial Commission for such purpose. The following notation was written upon the report thus filed: "It seems to be a question whether or not the Ry. Co. or our company should report this accident as Murray is an employe of the R. R. Co. but we pay the R. R. Co. his wages. This is the reason why this report was not sent in before. The R. R. Co. advised us to take care of the compensation." Signed, "Wasatch Grading Company, by W. O. Creer." On June 12, 1926, the Denver & Rio Grande Western Railroad Company filed a report of the injury to the plaintiff with the Industrial Commission of Utah. This report showed the Denver &

Rio Grande Western Railroad Company is a self-insurer under the Workmen's Compensation Law of Utah.

In the first answer filed by the defendant, it was admitted that the plaintiff was an employee of the Denver & Rio Grande Western Railroad Company. In an amended answer filed by the defendant it is alleged that the plaintiff, at the time he was injured, was an employee of the defendant and not an employee of the railroad company.

There is conflict in the evidence in the following particulars: Crowley, roadmaster of the railroad company, testified that, when he took the plaintiff to the camp of the defendant company, he explained to plaintiff that the defendant was required to pay his wages, and that therefore he would be expected to help the defendant all he could and not waste any time. Plaintiff denied that Crowley informed him that the defendant was required to pay his wages. Lenn Creer, who was in charge of the construction work of the defendant company, testified that from time to time he directed the plaintiff where to work and what he should do. The plaintiff testified that he never received any directions from Creer or any of the employees of defendant company as to what he should do or as to where he should work.

It is upon substantially these facts that the defendant contends, as a matter of law, the plaintiff was an employee of the defendant, and that therefore defendant was entitled to a directed verdict in its favor. On the other hand, it is plaintiff's contention that, under the evidence, the jury was justified in finding that the plaintiff was an employee of the Denver & Rio Grande Western Railroad Company and not an employee of the defendant at the time he was injured.

Since the enactment of the Workmen's Compensation Act in 1917, the exclusive remedy of an employee who is injured in the course of his employment is the right to recover the compensation provided for in the Act, Comp. Laws Utah 1917, § 3132, as amended by

Laws Utah 1921, p. 175. *Shurtliff* v. *O. S. L. R. Co.*, 66 Utah 161, 241, P. 1058.

This action apparently was tried upon the theory that the law applicable to an employer and employee as defined by the Workmen's Compensation Act of Utah is the same as the law of master and servant at common law. The briefs of counsel filed in this court, for the most part, proceed upon such theory. Counsel for defendant contends that the undisputed facts in this case show that the plaintiff was a servant of the defendant at the time he was injured. In support of such contention, the following cases are cited and relied on: *Sexton* v. *New York Cent. & H. R. R. Co.*, 114 App. Div. 678, 99 N. Y. S. 1111; *McInerney* v. *D. H. Canal Co.*, 151 N. Y. 411, 45 N. E. 848; *Charles* v. *Barrett*, 233 N. Y. 127, 135 N. E. 199; *Badertscher* v. *Independent Ice Co.*, 55 Utah 100, 184 P. 181; *Linstead, Adm'x*, v. *Chesapeake & O. R. Co.*, 276 U. S. 28, 48 S. Ct. 241, 72 L. Ed. 453; *Employers' Liability Assur. Corp.* v. *Ind. Acc. Comm.*, 179 Cal. 432, 177 P. 273; *San Francisco-Oakland Terminal Rys.* v. *Ind. Acc. Comm.*, 180 Cal. 121, 179 P. 386; *Famous Players Lasky Corp.* v. *Ind. Acc. Comm.*, 194 Cal. 134, 228 P. 5, 34 A. L. R. 765; *Dale* v. *Saunders Bros. et al.*, 171 App. Div. 528, 157 N. Y. S. 1062; *Bamberger Elec. Ry. Co.* v. *Ind. Comm.*, 59 Utah 257, 203 P. 345. The plaintiff cites in support of his contention, 39 C. J. pp. 34 to 37, §§ 1 to 7; 1 Labatt, Mast. & Serv. § 2.

It has been held that the failure of Congress to define the meaning that the words "employer" and "employee" should have in the application of the act manifests a purpose that these words should be used in their ordinary sense and be interpreted according to their use in the law of master and servant. *Louisville & N. R. Co.* v. *Walker's Adm'r.* 162 Ky. 209, 172 S. W. 517. Where, however, as in our Workmen's Compensation Act, the words "employer" and "employee" are defined, such definitions must control in so far as they may tend to modify the common law of master and servant. Laws Utah 1919, c. 63, p.

154, defines "employer" and "employee," so far as material here, as follows:

"3110. *Employers subject to provisions—Terms used.* The following shall constitute employers subject to the provisions of this title: * * *

"(2) Every person, firm and private corporation, including every public utility, that has in service three or more workmen or operatives regularly employed in the same business, or in or about the same establishment, under any contract of hire, express or implied, oral or written, except agricultural laborers and domestic servants; provided, that employers who have in service less than three employees and employers of agricultural laborers and domestic servants shall have the right to come under the terms of this title by complying with the provisions thereof and all rules and regulations of the Commission.

"The term 'regularly,' as herein used, shall include all employments, whether continuous throughout the year or for only a portion of the year. It means all employments in the usual course of the trade, business, profession or occupation of an employer.

"Where any employer procures any work to be done wholly or in part for him by a contractor over whose work he retains supervision or control, and the work so procured to be done is a part or process in the trade or business of said employer, then such contractor and all persons employed by him, and all subcontractors under him, and all persons employed by any such subcontractors, shall be deemed, within the meaning of this section, employees of such original employer. Any person, firm or corporation engaged in the performance of work as an independent contractor, shall be deemed an employer within the meaning of this Section. The words 'independent contractor,' as herein used, is defined to be any person, association or corporation engaged in the performance of any work for another, and while so engaged, is independent of the employer in all that pertains to the execution of the work is not subject to the rule or control of the employer is engaged only in the performance of a definite job or piece of work, and is subordinate to the employer only in effecting a result in accordance with the employer's design.

"3111 *Employe—Workman—Operative.* The terms 'employe,' 'workman' and 'operative,' as used in this title, shall be construed to mean: * * *

"(2) Every person, except agricultural laborers and domestic servants in the service of any employer, as defined in subdivision 2 of Section 3110, who employs three or more workmen or operatives regularly in the same business, or in or about the same establishment, under any contract of hire, express or implied, oral or written,

including aliens and also including minors who are legally permitted to work for hire under the laws of the State, but not including any person whose employment is but casual and is not in the usual course of trade, business or occupation of his employer."

It will readily be perceived from the foregoing definitions that the relation of master and servant as known to the common law is included within the Workmen's Compensation Act. The adjudicated cases affecting the principles of the common law that determine when the relation of master and servant exsists consider five elements: (1) The selection and employment of the servant; (2) the payment of the servant's wages; (3) the power to discharge the servant; (4) the power to control the servant's actions; and (5) the person whose work is being done by the servant. It is quite generally held that the first three elements above enumerated are not necessary to the existence of the relationship of master and servant. 37 L. R. A. note pages 38 to 43; 1 Labatt, Mast. & Servt. (2d Ed.) pp. 56 to 58. As stated by the Supreme Court of the United States in the case of *Standard Oil Co.* v. *Anderson,* 212 U. S. 215, 29 S. Ct. 252, 53 L. Ed. 480: "In many of the cases the power of substitution or discharge, the payment of wages and other circumstances bearing upon the relation are dwelt upon. They, however, are not the ultimate facts, but only those more or less useful in determining whose is the work and whose is the power of control."

The same court, in the recent case of *Linstead* v. *Chesapeake & O. R. Co.,* supra, says:

"Now the work which was being done here by Linstead and his crew was the work of the Chesapeake & Ohio Railway. It was the transportation of cars, loaded and empty, on the Chesapeake & Ohio Railway between Stevens and Cincinnati. It was work for which the Chesapeake & Ohio road was paid accordingly to the tariff approved by the Interstate Commerce Commission; it was work done under the rules adopted by the Chesapeake & Ohio Railway Company; and it was done under the immediate supervision and direction of the trainmaster in charge of the trains running from Stevens to Cincinnati, and that trainmaster was a superior employee of the

Chesapeake & Chio road. We do not think that the fact that the Big Four road paid the wages of Linstead and his crew or that they could only be discharged or suspended by the Big Four, prevented their being the servants of the Chesapeake & Ohio Company for the performance of this particular job."

A large number of authorities have applied as a test of controlling importance in the law of master and servant the determination of whether the person claimed to be the master had control of the actions of the person claimed to be the servant. 1 Labatt, Mast. & Servt. (2d Ed.) p. 222. In a very able opinion in the case of *Atlantic Coast Line R. Co.* v. *Tredways' Adm'x*, 120 Va. 735, 93 S. E. 560, 10 A. L. R. 1411, the Court of Appeals of Virginia reviews the law of master and servant and collects cases from various jurisdictions. In the course of the opinion, the court says:

Therefore, while we have not found it elsewhere so expressed in terms, the authorities on the subject have developed and led us to the necessary conclusion, where the duties of the master are nonassignable, that control is not the ultimate fact for which we are in search. The ultimate facts are, was the person in question engaged in the discharge of the duties of a servant of another, and was that service accepted by that other—was such service rendered and accepted? If so, the law implies the contract of master and servant between the latter and the former—of employer and employee— and the existence of that relationship between them."

Whatever difference of opinion there may be as to the accuracy of the test so tersely expressed by the court of Virginia as applied to the common law of master and servant, we are impressed with its applicability in the proper construction of our Workmen's Compensation Act. It will be observed that under the provisions of the Workmen's Compensation Act an employer is one who has in service three or more workmen or operatives regularly employed in the same business, or in or about the same establishment, under any contract of hire, express, or implied, oral or written. It will further be observed that, under the provisions of the act the employer retains the relation of em-

ployer towards the employees of a contractor over whom he retains supervision or control, and that an "independent contractor shall be deemed an employer within the meaning" of the act. That the defendant was an employer of the plaintiff within the terms of the Workmen's Compensation Act is clear. Defendant had in its employ more than three workmen at the time when and place where the plaintiff was injured. The plaintiff when injured was working under an express contract of hire, and was engaged in the usual course of the business or occupation of the defendant. According to plaintiff's testimony, he was engaged in placing a chain around a large rock so that a team driven by one of defendant's employees could remove the same from the railroad track, when another team driven by another employee of the defendant so moved a telephone pole that it rolled against plaintiff's leg and caused the injury complained of. It was the duty of defendant to keep the railroad track clear—that was its business or occupation. The plaintiff, at the time of his injury, was engaged in that business or occupation. Obviously, if the plaintiff had sought compensation under the Workmen's Compensation Act, the defendant would have been without any defense under the facts as shown by this record.

That the plaintiff was an employee of the defendant as defined by the Workmen's Compensation Act, at the time of his injury, is equally clear. That he was in fact rendering service for the defendant is without dispute. Plaintiff claims, however, that he did not receive orders from the defendant, and that he did not know that he was rendering services for the defendant. Plaintiff did testify, however, that, when he went to work in Spanish Fork Canyon, Mr. Crowley informed him that he should assist the defendant in removing debris from the railroad track at such times as he was not engaged in flagging trains or getting a line-up on the time when trains would arrive at the place where construction work was being done. It also appears without conflict in the evidence that the defendant's operations

caused the debris to get upon the railroad track, and its employees with the assistance of the plaintiff removed the same. At no time was the railroad company in charge of the work of cleaning the track of the rock and material thrown thereon by the operations of the defendant. No claim is made by the plaintiff that he ever inquired as to whose duty it was to keep the track clear or that he was misinformed concerning the same. Even if plaintiff's ignorance of the fact that he was rendering service for the defendant at the time he was injured should be regarded as material, we do not see how he is in a position to complain. Clearly, upon the record before us, the plaintiff must have known that the defendant had an interest in keeping the track clear. If plaintiff did not know of defendant's relaton to the work being done, such lack of knowledge on his part was his own fault.

It is also urged on behalf of plaintiff that the railroad company owed a duty to its patrons to keep its track safe, and that therefore the work of keeping the track clear was a service rendered to the railroad company. That the railroad company had an interest in keeping the track safe may well be conceded, but this does not alter the fact that the ultimate or primary duty in such respect was upon the defendant. The mere fact that the plaintiff may have been an employee of the railroad company at the time he was injured did not necessarily preclude him from also being an employee of the defendant. 1 Labatt, Mast. & Servt. (2d Ed.) § 15, p. 150; *Dale* v. *Saunders Bros. et al.*, supra; *San Francisco-Oakland Terminal Rys.* v. *Ind. Acc. Comm.*, supra.

We are of the opinion that under the facts in this case the relation of employee and employer as defined by the Workmen's Compensation Act existed as a matter of law between the plaintiff and the defendant. In such case the exclusive remedy of the plaintiff is to proceed under such act. If, therefore, the defendant carried insurance for the protection of the plaintiff at the time he was injured, the

442

plaintiff is precluded from prosecuting this action. Laws Utah 1919, § 3127, p. 160.

A number of errors are assigned as to the court's instructions to the jury. The view we have taken of the relation that existed between the plaintiff and defendant makes it unnecessary to discuss these claimed errors.

We are of the opinion that the trial court erred in refusing to direct a verdict in favor of defendant. Judgment is reversed. Cause remanded to the court below, with directions to grant a new trial. Appellant is awarded costs.

THURMAN, C. J., and CHERRY, STRAUP, and GIDEON, JJ., concur.