# WEBER COUNTY-OGDEN CITY RELIEF COMMITTEE v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5610.   Decided August 30, 1937.   (71 P. [2d] 177.)

*George S. Barker,* of Ogden, for plaintiff.

*Joseph Chez,* Atty. Gen., *Willard Hanson,* of Salt Lake City, and *David J. Wilson,* of Ogden, for defendants.

HANSON, Justice.

This is an original proceeding brought by Ogden City to review an award made by the Industrial Commission of Utah, awarding defendant, J. D. North, compensation for injuries sustained by him while working on one of the streets in Ogden City. Mr. North filed his application for compensation April 12, 1934, alleging that on November 10, 1933, he was employed as a laborer by Ogden City and Weber county; that while assisting in operating a plow on Cahoon street, the plow struck a pipe line and fell on his leg fracturing the same in two places. In his application for compensation he named Ogden City and Weber county as defendants.

It appears from the files before us that an employer's report was filed November 29, 1933, naming Weber County-Ogden City Relief Committee as the employer. The Industrial Commission apparently made up its file of the case from this report and has carried the matter on through to and including its decision under the title of *J. D. North, Applicant* v. *Weber County-Ogden City Relief Committee, Defendant,* notwithstanding North's application named Ogden City and Weber county as defendants and as his employers. The record shows that notice of hearing of the application for compensation was sent to applicant, to his attorney, and to Ogden City Relief Committee, 2451 Kiesel ave., Ogden, Utah. At the hearing no one appeared for the Weber County-Ogden City Relief Committee or for the Ogden City Relief Committee as such. The city attorney of Ogden City appeared as counsel for that city and the assistant county attorney appeared as counsel for Weber county. Counsel for Ogden City and Weber county objected to the matter coming on for hearing at the time set because no notice had been given the city or the county. The matter was then continued

two days by agreement. At the time thus agreed upon, a hearing on the merits was had, at which Ogden City and Weber county were represented by their respective counsel who participated fully in the proceedings.

No question was raised as to the title of the case used by the commission nor as to the sufficiency of the notice of the hearing, but the hearing proceeded under the assumption that Ogden City and Weber county were the real parties defendant as named by North in his application for compensation. The only defense relied upon by Ogden City and also by Weber county at the hearing was that they each denied they were the employer of Mr. North at the time of his injury. After hearing the matter on stipulations of fact and evidence of witnesses, the Industrial Commission made findings of fact and entered an award for compensation. The findings of fact, so far as material to the issues here before us, are as follows:

"1. On November 10th, 1933, J. D. North was employed as laborer by Ogden City Corporation; on said date he was paid a wage amounting to the sum of $3.00 per day, working part time, that is to say, he worked 9 days per month; on said date Ogden City Corporation had elected to pay compensation directly to its injured employees or their dependents in case of death.

"3. At the time of the injury applicant was engaged in performing work necessary to improve and maintain the streets of Ogden City Corporation and was therefore engaged, at the moment of his injury, in performing a service for Ogden City Corporation, which was a necessary part of the regular business conducted by Ogden City Corporation; the work upon which applicant was engaged at the time of his accidental injury was supervised by the Supervisor of Streets of Ogden City Corporation, and the applicant was subject to the control, direction and supervison of Ogden City Corporation."

The commission made the following conclusions:

"In view of the foregoing findings, the Commission concludes that J. D. North, applicant herein, on November 10th, 1933, was injured by reason of an accident arising out of or in the course of his employment while employed by Ogden City Corporation. Therefore, Ogden City Corporation should be required to pay compensation to

the applicant as by law provided, to pay medical and hospital expenses incurred, and to furnish further medical and hospital treatment, if necessary."

To reverse the award of the Industrial Commission, Ogden City argues that there is no competent evidence to sustain the finding that Mr. North was employed by Ogden City on November 10, 1933, and was then and there subject to the control, direction, and supervision of Ogden City; that such finding is contrary to the evidence. As a basis for its position, Ogden City contends that the competent evidence in the record "does not satisfactorily nor clearly set forth or make plain what this Weber County-Ogden City Relief Committee was, how it originated, how it was constituted and brought into being, or who or what entity was responsible for its conduct and operation." It is the city's position that defendant North made his claim for compensation against the Weber County-Ogden City Relief Committee and that there is no evidence to connect Ogden City with that committee in such manner as to make the city liable for compensation. As already stated, this position is untenable for the defendant North filed his claim against Ogden City and Weber county and not against the relief committee. The irregularities arising from the Industrial Commission entitling the proceedings as against the relief committee and disposing of the matter under that title are not made the basis for reversing the award made and must be deemed waived. Indeed, counsel for Ogden City very frankly stated in his oral argument that he was not relying on any technical objections; that if the court should decide that Ogden City was the employer of the defendant North when he was injured, then the city would admit its liability and pay the award.

It was stipulated at the hearing that North was injured in the course of his employment, whoever his employer was; that there was no question as to the amount of his wages and that he was working nine days per month; that the only

question was, Who was his employer and who would be liable? The following facts were stipulated: The Weber County-Ogden City Relief Committee (hereinafter called committee) had been appointed by the county commissioners in connection with the State Relief Committee appointed by the Governor, and this same committee was still acting at the time Mr. North applied for work, although the relief set up had been changed some time after the committee's appointment. Mr. North applied for work with the committee. His name was put on the rolls and when his time came he was given a work order calling for 72 hours of work. To provide work for those thus registered with the committee, Ogden City proposed, among other projects, the work which was done on Cahoon street which consisted of leveling off a high place in that street, which project was approved by the committee. Upon the approval by the committee of this project, this fact was certified to the general relief committee and the person in charge of the relief rolls issued work orders to the various persons receiving relief, among such orders being the one given North above referred to. The work on this project was done by persons on relief, including North, under the direction of Mr. McGregor, who was street supervisor for Ogden City. The foreman on the job certified to the committee the number of days which the relief workers, including North, worked. North worked about 2½ days before his injury and was given script for that work. The script was given to him by the committee. Merchants accepted the script so issued, in exchange for merchandise. At the end of the month they would present the script received by them to the committee, which committee would audit the same and certify the audit to the state auditor's office. The state auditor would issue to the merchants direct state warrants payable out of the funds granted by the state and by the United States Congress. Upon presentation to the State Treasurer, these warrants would be paid from such funds. None of the funds ever came into the hands of Ogden City or Weber county or the com-

mittee. From time to time the committee and the county commissioners would sign and send in to the State Relief Committee an estimate of the amount needed for relief during a stated period. The state committee would not allot any particular amount. The local committee simply went ahead and incurred the obligations not to exceed a certain amount. The work at which Mr. North was engaged when injured was within Ogden City limits. Any project proposed by Ogden City, including the one in question, would be determined by the city commissioners and the city engineer's department.

In addition to the foregoing stipulated facts, the following appears from the evidence: Mr. J. S. McGregor testified the employer's report filed with the Industrial Commission was prepared by Mr. Rackman, commissioner of streets of Ogden City, and was signed by Mr. McGregor as Ogden City street supervisor. At the time of the injury, Mr. McGregor was street supervisor for Ogden City and had charge of the work then being done and on which Mr. North was working. This work of leveling off a big, high place on Cahoon street was a necessary part of the work of the street supervisor in keeping the streets in repair and in improving them. The men employed, including Mr. North, were paid $3 per day for a certain number of days per month. The city would continue improving the streets during regular working days. Mr. McGregor further testified that Mr. North was employed directly by Ogden City on regular employment. The work was carried on wholly and solely by Ogden City so far as supervision was concerned. Mr. McGregor directed the men on this project in his regular capacity as street supervisor and received his entire compensation from Ogden City. Mr. Rackman, commissioner of streets, directed Mr. McGregor to have this work done. When Mr. North presented his work order to Mr. McGregor, the latter put him to work. Even though the relief workers had not done this particular work, it would have been done some time. It was

work that should be done and it was the kind of work which the street supervisor would ordinarily have done.

Defendant North testified that he registered with the Weber County-Ogden City Relief Committee and was given an order to go to work for the city. The relief committee did not direct him where he should work. They gave him an order on Ogden City, told him to go to the city barns, and then the city designated where he should be employed. Mr. McGregor sent him out to this particular project. He did not know whether he was going to work until assigned at the city barns. The amount of work provided for in the work orders was determined by the number of dependents supported by the relief worker.

Mr. Claud Wheeler, auditor for the Weber County-Ogden City Relief Committee, testified as follows: The script which was issued to the relief workers was issued by the committee. It was left to Ogden City to determine the nature of the work to be done and how it was done; the regular officers of the city selected the places of employment and directed the men in the work. Outside of Ogden City the Weber county officials exercised supervision. Mr. O'Connor who issued relief orders was working for and was paid by the city. Mr. Shanaussey, who issued the order under which North was working, was a Weber county employee paid by the county. After the employees received their work orders, this committee would have no direction or supervision over the work they performed. If they were released from the work and did not receive full compensation, they were reassigned to another job. The committee had nothing to do with the supervision or direction of the work itself; it acted as a clearing house to see that these men got on the job from the employment office.

In its brief, Ogden City has not attempted to show wherein the evidence fails to support the findings attacked by it. It merely makes the bald assertion that there is no substantial evidence to support these findings, citing the case of *Harness* v. *Industrial Commission of Utah,* 81 Utah 276, 17 P. (2d)

277, presumably on the proposition that the findings must find support in the evidence. Neither party has discussed, or even referred to, the possible bearing which the element of unemployment relief has upon the creation and existence of the relationship of employer and employee, between Ogden City and the defendant North. It is apparent that that element involves important considerations and is not free from difficulty in arriving at a proper solution of the matter here before us.

The decisive question presented by these proceedings is whether defendant North was an employee of Ogden City at the time he sustained his injury as contemplated by our Workmen's Compensation Act (Rev. St. 1933, 42-1-1 et seq.). That question is jurisdictional and imposes upon us the duty to determine the facts in that regard from a preponderance of the evidence, and to apply to the facts so found, the law applicable thereto. *Angel* v. *Industrial Commission of Utah*, 64 Utah 105, 228 P. 509, 511; *Luker Sand & Gravel Co.* v. *Industrial Commission*, 82 Utah 188, 23 P. (2d) 225. In considering whether a particular person sustains the relation of an employee of another, the courts generally have stated certain principles as guides to the proper solution of that question. This court, in several cases, has stated the principles as generally followed by the courts of this country. In the cases of *Angel* v. *Industrial Commission*, supra, and *Luker Sand & Gravel Co.* v. *Industrial Commission*, supra, in determining whether the applicant for compensation was an employee or an independent contractor, this court applied the principle stated as follows:

"Whenever the employer retained supervision and control of the work to be performed, no matter what relation he had sought to establish, the workmen under him were to be deemed his employes."

It may be admitted that the application of that principle in those cases was called for by the express language of the statute defining an independent contractor. Obviously, however, this rule is not limited in its application to cases involving a distinction between an independent contractor and an employee. It was applied in the case of *Bingham City Corp.*

v. *Industrial Commission of Utah*, 66 Utah 390, 243 P. 113, where that distinction was not involved. In the case of *Murray* v. *Wasatch Grading Co.*, 73 Utah 430, 274 P. 940, 943, a case involving an action for personal injuries in which the Workmen's Compensation Act was relied on as a defense, this court summarized the elements which, under the common law, are to be considered in determining when the relation of master and servant exists, as follows:

"(1) The selection and employment of the servant; (2) the payment of the servant's wages; (3) the power to discharge the servant; (4) the power to control the servant's actions; and (5) the person whose work is being done by the servant."

The court refers to the case of *Atlantic Coast Line Railroad Co.* v. *Tredway's Administratrix*, 120 Va. 735, 93 S. E. 560, 563, 10 A. L. R. 1411, a case which points out that the element of control over the worker is not the ultimate fact to be found, as control is more of a consequence of employment than a factor establishing that relationship, and the relation of employer and employee may exist without the employer having control over the employee in cases where the duties of the master are unassignable. The Virginia court states the determinative proposition as follows:

"The ultimate facts are: Was the person in question engaged in the discharge of the duties of a servant of another, and was that service accepted by that other—was such service rendered and accepted? If so, the law implies the contract of master and servant between the latter and the former—of employer and employe—and the existence of that relationship between them."

The test thus stated was held in the Murray Case to be applicable in the proper construction of our Workmen's Compensation Act. The question before the court in that case was whether the plaintiff was an employee of the defendant Wasatch Grading Company or of the Denver & Rio Grande Western Railroad Company.

It is always difficult to lay down an all-embracing rule as a definite and exclusive guide in all cases to the proper

solution of some particular legal question. It is impossible to foresee and provide against the infinite variations under which and the different aspects in which some legal proposition may be involved. What might be a controlling element in one case may not be controlling in another.

In 1 Labatt's Master and Servant (2d Ed.) 56-74, the author discusses the elements generally held as indicative of the relation of master and servant. He refers to (1) exercise of control over the details of the work, (2) payment of compensation, (3) power of appointment, (4) power of dismissal, and (5) for whose benefit the given work was done. He regards the first element as the one which, in the last analysis, must "always determine what was the essential nature of the relationship between the person who performed the given work and the person for whom it was performed." The other elements are merely corroborative of the first if the first is shown to be present; and if the first element cannot be shown directly, the other elements are indicative of conditions which imply that control over the worker was in fact exercised by the person declared to be the master.

In the case of *Standard Oil Co.* v. *Anderson,* 212 U. S. 215, 29 S. Ct. 252, 255, 53 L. Ed. 480, it was said that the power of substitution or discharge, the payment of wages are not the ultimate facts, but only such facts as are more or less useful in determining "whose is the work and whose is the power of control." Also, in *Linstead* v. *Chesapeake & O. Ry. Co.,* 276 U. S. 28, 48 S. Ct. 241, 72 L. Ed. 453, it was held that the fact that one person paid the worker's wages and had the exclusive right to discharge or suspend him would not prevent such worker from being the servant of another. Both of these cases are referred to and quoted from in *Murray* v. *Wasatch Grading Co.,* supra.

We think sufficient has been said to indicate the elements involved in determining the question before us, namely, Was defendant North an employee of plaintiff, Ogden City, for purposes of compensation under the Workmen's Compen-

sation Act, leaving aside for the moment the possible effect which the fact that North was working on a relief project might have on that question?

The evidence clearly discloses that defendant North, being out of work and in need of work, applied to the local relief committee for work. His name was placed on a certain roll containing names of those who were applying for work and when his turn came he was given an order entitling him to 72 hours of work that month. The committee did not put him to work. He was sent to Ogden City barns with this work order. The committee did not tell him what he was to do or where he was to work or what kind of work he was to do. From the time he reported at the city barns until he was injured, he was under the exclusive control, direction, and supervision, so far as his work was concerned, of Ogden City through its supervisor of streets. When he reported at the city barns, he was told by the street supervisor to work on the Cahoon street project and was told to assist in the work of plowing the street. Apparently the only function of the work order issued by the relief committee was to inform the street supervisor that North was eligible to work on a make work project sponsored by the city. It did not constitute any contract of employment. Mr. North's employment was initiated when the supervisor directed him to go to work. The work of eliminating the high place in Cahoon street was such work as the street department of Ogden City ordinarily was engaged in and such that a proper maintenance of the city's streets would require to be done. The selection of this particular work as a "make work" project was done by the city. So far as the evidence discloses, there was nothing to prevent the city from discontinuing the project at any time and thus terminate the services of those who worked thereon at any time. The city was not bound to use North on this project or at all. The services which North performed were certainly such as would be performed by a servant of the city and were such as the city had power to employ, relating as they did to that kind of work

which it was the right and duty of Ogden City to perform in the ordinary maintenance and repair of its streets. The services performed by North were accepted by the city and the city got the full benefit thereof.

It appears, therefore, that, measured by the test approved in *Murray* v. *Wasatch Grading Co.*, supra, defendant North at the time of his injury was an employee of Ogden City within the meaning of that term as used in the Workmen's Compensation Act. It also appears that all of the elements usually held to be indicative of the relation of employer and employee, referred to in the Murray Case and by Labatt, as above outlined, are present, except that Ogden City did not pay the compensation received by North. The fact that North was not paid by the city for his services is not controlling and is such a circumstance as may be disregarded since all the other evidence points to the conclusion that he was an employee of the city. 1 Labatt's Master and Servant (2d Ed.) 63. It is clear that neither the local unemployment relief committee nor the State Relief Committee, through which Mr. North received compensation for his services, employed him. The funds used to pay him came from federal and state funds raised for the purpose of paying workers who performed work on the "make work" projects. The mere payment of North's compensation through such a set-up would not tend to prove him to be an employee of the state or local relief committee and would not have the effect of negativing his being an employee of the city.

We have discussed thus far the question before us without considering in connection therewith the fact that Mr. North, when injured, was working on a "make work" project designed to provide employment to the needy who were out of employment. Perhaps the first case in this country to pass upon the question as to whether the Workmen's Compensation Act is applicable to situations where needy persons are put to work by a municipality or other public body as a means of extending aid to them is *Vaivida* v. *City of Grand Rapids*, 264 Mich. 204, 249 N. W.

826, 827, 88 A. L. R. 707. The court was divided, the majority taking the view that where a municipality is called upon to support paupers, it has a right to their services, which "right does not arise out of contract at all but as a counterpart of the statutory duty to care for poor persons," there being a statute requiring the city to maintain the poor residents therein. There is a strong dissenting opinion in which the view is taken that the means of providing for needy persons involved in the "make work" projects was not the means required or authorized by the statute requiring the city to care for its poor so that what was done by the city was done by virtue of its general powers and not in furtherance of the special duty to care for its poor. As shown by the annotation in 88 A. L. R. 712, the view taken by the majority of the court is contrary to that taken by the English cases. A later annotation of the question is found in 96 A. L. R. 1154. It there appears that a majority of the cases hold that the relationship of master and servant does not exist between relief workers and the municipality where the relief workers are engaged in public work as a condition of their receiving aid from public funds set aside for such purpose and the Workmen's Compensation Act does not apply. The note also shows that the opposite view is taken by a number of courts, to the cases cited in the note taking the view that the relation of employee and employer exists should be added *Hattler* v. *Wayne County*, 320 Pa. 280, 182 A. 526, and *Conn* v. *Lower Tyrone Tp.*, 120 Pa. Super, 537, 182 A. 726.

An examination of the cases holding that a relief worker is not an employee within the meaning of the Workmen's Compensation Act will disclose that the courts in many of the cases arrived at this conclusion because the public body sought to be charged as an employer was under statutory obligation to provide for its indigents and by reason thereof would be entitled to the services rendered by such indigents; that because of the duty of the municipality to give support to the needy the relationship between it and the relief worker could not be considered wholly voluntary. *Clark* v. *North*

*Dakota Workmen's Comp. Bureau*, 66 N. D. 17, 262 N. W. 249. Other cases, while not discussing or referring to any statutory duty resting on the public body involved to support its poor, have adopted the same rule and have relied upon the cases falling in the class above mentioned as authority.

In the cases of *Industrial Commission* v. *McWhorter*, 129 Ohio St. 40, 193 N. E. 620, 96 A. L. R. 1150, and *Hattler* v. *Wayne County*, supra, the courts took the view that the furnishing of work relief was not to be considered as being in the same category as a caring for paupers and indigent persons under the poor laws.

In this state the duty of caring for the poor is placed upon the counties. Section 19-5-55, R. S. Utah 1933, makes it the duty of the county to provide for the indigent sick and dependent poor within the county, although residing in incorporated cities and towns. There is nothing in our statutes which places upon a city the duty to provide for the poor residing within its limits. See concurring opinion of Mr. Justice Straup in *Bohn* v. *Salt Lake City*, 79 Utah 121, 8 P. (2d) 591, 81 A. L. R. 215. Under chapter 88, Laws Utah 1933, p. 141, the Governor was authorized to administer emergency relief aid to destitute residents of the state. Chapter 23, Laws Utah 1933, 2d. Spec. Sess., provides for public works program for providing employment to the unemployed and for participation in the benefits of the National Industrial Recovery Act (48 Stat. 195). In neither of these acts is any duty for caring for the unemployed within their boundaries placed upon cities. It seems clear to us that the administration of these acts was not intended as being an adjunct to or an extension of the administration of the statutes already on the books providing for the care of the indigent. Persons receiving assistance under the administration of those acts, and especially those who apply for and are given employment thereunder, should be distinguished from and be placed in a different classification than those receiving aid as dependent poor and indigent under section 19-5-55, R. S. Utah 1933.

Since Ogden City was not required by law to provide for defendant North, he cannot be considered a ward or charity case of the city. The city's undertaking to provide work for North was wholly voluntary. His acceptance of that work was voluntary. He owed the city no duty or obligation to do work for it. In such a situation, by what term known to the law can the relationship between the city and North be defined, if it is not one of master and servant, employer and employee? It would seem that the basic reasoning of the cases which hold that a relief worker is not an employee has no application to this case since the relationship between Ogden City and North did not arise out of any legal duty of the former to support and provide for the latter.

Section 42-1-41, R. S. Utah 1933, defines the words "employee," "workman," and "operative" to mean:

"(1) Every elective and appointive officer, and every other person, in the service of the state, or of any county, city, town or district board of education within the state, serving the state, county, city, town or district board of education therein under any election or appointment, or under any contract of hire, express or implied, written or oral."

This language is broad enough to bring Mr. North within its terms under the facts of this case. He was performing services for Ogden City such as an employee of that city would have performed. He was to work 9 days a month and was to be paid $3 per day for the services rendered, to be paid by relief funds provided by the state. The only difference in the relationship thus created and that which would exist where the city employed a workman in the usual course of its business is to be found in the fact that in the one case the state provided the funds for paying North while in the other case the city would provide the funds to pay the employee. In either case the funds are public funds, though coming from different channels of taxation. The mere fact that the city did not pay North from its own funds does not prevent him from being its employee. We have

already discussed that element so far as it has a bearing on North's relationship to the city. In recent years it has been the policy of the federal government to make grants of money to states and municipalities to be used in the construction of public works. Can it be contended that because one employed by a state or municipality on some public work is paid from such moneys he is not to be considered an employee?

The relief committee, as already shown, had no control or supervision over the work done by the city or over North in his connection with that work. As stated by Mr. Wheeler, the auditor for the relief committee, all that the committee did was to act as a clearing house to see that the men got on the job from the employment office. The city proposed and provided the work project and used the men thus supplied on that work. The situation appears to be no different from that which would have arisen had some private employment agency called the city and placed at the city's disposal men who had applied through the agency for work. In either case when the city put the men to work, it would thereby select the men and create a contract of employment as effectively as if it had gone out and entered into a contract of employment directly. The city is charged with maintaining its streets. It certainly was not within the power of any relief committee to exercise any control over the manner in which that duty was to be discharged, and, consequently, it could not compel the city to employ or retain in its employ any particular laborer, nor could it give any directions to any laborer as to what he should do or how he should do it in connection with such employment. Likewise, such committee could not have prevented the city from terminating the street work in which North was engaged at any time and thus effectively discharge all workmen it did not see fit to retain for some other work. It thus clearly appears that from the moment North reported at the city barns and was directed to work in this particular project he was completely under the control and supervision, so far as

the work he was to and did engage in was concerned, of the city street department. He was not a ward of the city nor a pauper whom the city was required to support. He was an employee of the city. *Hattler* v. *Wayne County*, supra; *Industrial Commission* v. *McWhorter*, supra.

It is admitted that North was injured in the course of his employment and that all the elements necessary to entitle him to compensation are present if it be determined that Ogden City was, in law and fact, his employer. We feel that the evidence is ample to support the finding of the Industrial Commission that he was an employee of Ogden City. It must follow also that the finding of the Industrial Commission to the effect that North was subject to the control, direction, and supervision of Ogden City is also supported by the evidence.

In its brief Ogden City states that there was an inclination on the part of some one, presumably the commissioner who conducted the hearing, to so direct questions to the witnesses as to elicit testimony that would support a finding that North was employed as a laborer by Ogden City. Complaint is made of the use of leading questions. We have examined the record and are satisfied that there is no merit to this contention.

The award of the Industrial Commission is affirmed.

FOLLAND, C. J., and MOFFAT and LARSON, JJ., concur.

WOLFE, Justice.

I concur on the ground that the definition of employee contained in section 42-1-41, R. S. Utah 1933, encompasses North as an employee of Ogden City for the purposes of compensation. Whether for any other purposes, I think it unnecessary to state. As to whether he would have a claim against the city for services if not paid by the State Treasurer, or if the city could be held liable on the theory of respondeat superior if he were negligent, or if certain of the various consequences which ensue in the law from the em-

ployer-employee relationship would follow from the relationship between North and Ogden City, it is unnecessary to determine. For purposes of compensation, he was serving the city under an implied contract of hire. The labor was obtained from the reservoir of labor controlled by the relief board and the stipend paid from a fund provided by the state and federal government. Whether under some other legal aspect of this situation this work would be viewed as a quid pro quo for state and federal relief is not necessary now to determine. I opine that if some rich citizen supplied the fund for a city project and some agency proffered the laborers and the wages were paid out of the citizen's fund by vouchers from the city supervisors by the rich citizen's agents, we would hold that the city was the employer under section 42-1-40 if it supervised the work, directed the workmen, and could refuse to employ. By such conduct and powers a contract would be implied under that section.

In the case of *Rich* v. *Industrial Comm.*, 80 Utah 511, 15 P. (2d) 641, attention was called to the fact that a county sheriff could at different times serve the state, county, or city although he was a county officer and was paid by the county. In this case, North, regardless of who employed him, was at the time of the accident serving Ogden City.