436 P.2d 944

**Joseph NOCHTA, Petitioner,**

v.

**INDUSTRIAL COMMISSION of Arizona and Chanen Construction Company, Inc., Respondents.**

**No. 1 CA–IC 152.**

Court of Appeals of Arizona.

Feb. 7, 1968.

Rehearing Denied March 6, 1968.

Review Denied April 11, 1968.

Goldman & Ripps, by Charles H. Ripps, Phoenix, for petitioner.

Robert K. Park, Chief Counsel, by Glen D. Webster, Phoenix, for respondents.

CAMERON, Chief Judge.

This is a writ of certiorari to review an award of the Industrial Commission which found that the petitioner, Joseph Nochta, was not an employee of Chanen Construc-

tion Company at the time he was injured and "ordering" reimbursement for the amounts paid by the Commission for accident benefits and compensation.

We are called upon to determine whether petitioner was an employee or an independent contractor at the time of the accident on 26 October 1965.

From the Reporter's Transcript of the hearing conducted by the Commission and from the file, the facts necessary for a determination of this matter are as follows. For several years prior to the accident petitioner, Joseph Nochta, had been doing business as Frontier Floor Finishers. In this capacity he had worked as a subcontractor for Chanen Construction Company on other jobs, and during the summer of 1965 petitioner d/b/a Frontier Floor Finishers subcontracted a "clean up" for Chanen Construction Company at Moon Valley High School. It is the testimony of petitioner that at this time he got tired of his losses in the contracting business and decided at the end of the third quarter of 1965 to cease the contracting business and work as an employee. It is his testimony that his report to the Industrial Commission for industrial insurance submitted at the end of the third quarter of 1965 contained a statement to this effect. That document was not presented by the Commission or the petitioner at the hearing, nor was petitioner's statement in this regard contradicted by the Commission.

It was the testimony of the construction manager for respondent, Chanen Construction Company (James Raine), that petitioner had done work for the respondent company as a subcontractor for over three years, and that on the Moon Valley job in October the petitioner had to color the floor in the gym after it had been poured, and that:

"In order to minimize the expenditure by Chanen Construction we were buying the material and Joe was furnishing the labor on a cost basis."

It was also Mr. Raine's testimony that they seldom did business on the basis of verbal contract, and that where a subcontractor is present it is usually by written contract. He further testified that there was no written contract in regard to the work being performed in October of 1965, and that petitioner was to be paid at the rate of $4.40 per hour.

Mr. Raine was questioned by the attorney for the Fund as follows:

"Q In your capacity as construction superintendent do you know whether that job was under the supervision or control of anybody in the Chanen Construction Company?

"A At that time it was under the control of Martin Quinn.

"Q Martin Quinn?

"A Yes.

"Q But would he, Martin Quinn, have had any control, actually, or supervision, of Mr. Nochta except, perhaps, to show him the kind of job he wanted done?

"A I don't suppose. There was just one room to do, and one thing to do on it, so it didn't require, wouldn't require much supervision."

The testimony of the job superintendent, Martin Quinn, indicated that he hired Nochta and that he, Quinn, exercised a certain amount of control over his work, that he was to receive finisher's wages, and that it was at his direction that Mr. Nochta was put on the payroll and that was done "about three weeks before the accident".

Mrs. Kline, the comptroller of Chanen Construction Company, contradicted this and testified that on 26 October Mr. Nochta was acting as a subcontractor, and that sometime after the accident, "He (Mr. Quinn) came in and asked if I could possibly put Joe on the payroll for this one particular phase of the work, which was coloring of the gym floor, and I consented to do it." Both Quinn and Mrs. Kline testified Nochta was to receive $4.40 per hour for the work done and there was no mention of a total contract price.

The evidence indicates that petitioner also worked for Malouf Enterprises in October 1965 as an employee, and that Malouf made payments to the Arizona Basic Crafts Health and Welfare Trust Fund for petitioner. Chanen Construction Company filed a Quarterly Report of wages for State Unemployment Insurance for the quarter ending 3/31/66 which listed Joseph Nochta as an employee receiving $1,237.91 in wages. However, the report to the Arizona Basic Crafts Health and Welfare Trust Fund carrying the notation "Sept.–Oct. Supplemental" listing J. Nochta as an employee for September and October 1965 and enclosing the amount of $41.63 in health and welfare contributions was not filed until 21 April 1966.

The testimony is sufficient to indicate that the job performed by Mr. Nochta of finishing and staining the floor of Moon Valley High School Gymnasium was a job in which he was pretty well left on his own. At times he would have to work in the afternoon and evening after the students left. The testimony is clear, however, that there was some degree of control exercised by the employer over the petitioner.

Petitioner was injured on 26 October while moving some bleachers, and the Commission accepted jurisdiction. To add to the confusion of all concerned, after Joseph Nochta was injured, the job was completed by a cousin also named Joseph Nochta, d/b/a A–1 Floors, and a draft issued 19 April 1966 was made jointly to Frontier Floor Finishers and A–1 Floors.

Invoices submitted by the petitioner, Joseph Nochta, 9 and 17 October and 15 November 1965 contained the number of hours worked, and only Joseph Nochta's name was at the top of the page with a total of $1,465.20. The invoices submitted for the work in August and September of 1965 carried the title "Frontier Floor Finishers", Nochta's name, and his license number. Chanen Construction Company deducted $234.07 as a backcharge for the bleachers, and no objection was made by Joseph Nochta.

After further action by the Commission an award was issued finding that Nochta was an independent contractor, and the Commission demanded the return of sums spent on his behalf.

We are called upon to determine whether or not petitioner was an independent contractor at the time of the accident. The evidence is sufficient from which the Commission could find that both petitioner's immediate supervisor and Joe Nochta himself made an attempt to be listed as an employee of the respondent Chanen Construction Company after the accident by having payroll deductions taken from the amount that he was to receive and other acts done after the accident had occurred. These acts in and of themselves do not negate the possibility that petitioner was in fact an employee of the Chanen Construction Company at the time of the accident. Our Supreme Court has indicated that even where the parties intend to enter into a contractual relationship, the legal result may be one of employer-employee. When this becomes apparent, the parties may take such steps as are necessary to comply with the Workmen's Compensation Law:

"It appears that the employer acted in good faith and under the belief that Trout was an independent contractor. It was for these reasons that it failed to pay premiums. When the commission, the proper tribunal to decide, found that Trout was not an independent contractor, the employer offered to pay the premiums. We think it had this right." West Chandler Farms Company v. Industrial Commission, 64 Ariz. 383, 391, 173 P.2d 84, 89 (1946).

Our Supreme Court has also stated:

"The body of the law concerned with distinguishing independent contractors from employees is, indeed, huge. And though no hard and fast rule can be

set forth, but instead each case must be determined by the sum total of its own facts, the general test laid down by our own statute (Section 56–928) and by the great weight of authority is whether the alleged employer 'retains supervision or control over the method of reaching a certain result, or whether his control is limited to the result reached, leaving the method to the other party'. (citations omitted) In order to apply this test and so determine the extent of this 'right to control', courts look for a variety of signposts or indicia none of which are in themselves conclusive but which when taken together and applied to a particular set of facts, aid in making the line to be drawn more clear." Blasdell v. Industrial Commission, 65 Ariz. 373, 376, 181 P.2d 620, 622 (1947).

And:

"The test has been held to be whether the alleged employer retains control over the method of reaching the required result or whether his control is limited to the result reached, leaving the method to the other party." Posey v. Industrial Commission, 87 Ariz. 245, 253, 350 P.2d 659, 664 (1960). See also Industrial Commission v. Farm and Home Food Service, Inc., 5 Ariz.App. 339, 426 P.2d 808 (1967).

And while it is conceded here that the petitioner was left largely on his own, it is the right to control rather than the exercise of that right which establishes an employer-employee relationship:

"It is the right to control rather than the fact that the employer does control that determines the status of the parties, and this right to control is, in turn, tested by those standards applicable to the facts at hand." Industrial Commission v. Meddock, 65 Ariz. 324, 330, 180 P.2d 580, 584 (1947).

And:

"Many factors must be considered in differentiating between an independent contractor and an employee. The degree of supervision and control exercisable by the employer often is determinative. Grabe v. Industrial Commission of Arizona, 1931, 38 Ariz. 322, 299 P. 1031. Here there was little occasion for supervisory direction, as is apparent from the nature of the tasks to be performed—cleaning automobiles and the tidying up of the premises. But it is not the exercise of the power to supervise and control but rather its existence which is to be considered." Scott v. Rhyan, 78 Ariz. 80, 82, 275 P.2d 891, 892 (1954).

Although petitioner held a contracting license this is not controlling. A.R.S. § 23-902 states in part as follows:

"B. When an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, then such contractors and the persons employed by him, and his subcontractor and persons employed by the sub-contractor, are, within the meaning of this section, employees of the original employer.

"C. A person engaged in work for another, and who while so engaged is independent of the employer in the execution of the work and not subject to the rule or control of the person for whom the work is done, but is engaged only in the performance of a definite job or piece of work, and is subordinate to the employer only in effecting a result in accordance with the employer's design, is an independent contractor, and an employer within the meaning of this section."

The evidence is clear in the instant case that the respondent construction company exercised that degree of control over the job to be performed by the petitioner sufficient to bring petitioner within the meaning of § 23-902, subsec. B. They provided the material that he was to use; the job super-

intendent together with the architect made inspections of the job and there were consultations; but the final and exclusive control of the job was vested in the job superintendent. The fact that petitioner was knowledgeable and trusted in his field does not lessen the ultimate control over the job by the job superintendent. Petitioner's past and post injury conduct and the fact of the backcharge are not conclusive. The fact that the comptroller of the company may have assumed that when Nochta started work he would be, as in previous situations, an independent contractor even though paid on an hourly basis does not make him in fact an independent contractor. As our Supreme Court early stated:

> "* * * If A procures B to do certain work for him which is a part or process in A's trade or business, and retains supervision or control over the work, then B and all B's employees and subcontractors to the Nth degree are, for the purpose of the Compensation Act, employees of A, no matter what terms or method of employment or compensation. It is obvious that were this not so the beneficent purposes of the act could and would be easily defeated or evaded by unscrupulous employers through the aid of various dummy intermediaries. The statute therefore brushes aside all forms and subterfuges and provides that one just, simple and definite test. If the work be part of the regular business of the alleged employer, does he retain supervision or control thereof? All other matters are of importance only as they throw light on this question." Grabe v. Industrial Commission of Arizona, 38 Ariz. 322, 328, 299 P. 1031, 1034 (1931).

The finding by the Commission that the petitioner was an independent contractor is not reasonably supported by the evidence.

Award set aside.

DONOFRIO and STEVENS, JJ., concur.