**Steve William HINDS, Plaintiff and Appellant,**

v.

**HERM HUGHES AND SONS, INC., Defendant and Respondent.**

**No. 15184.**

Supreme Court of Utah.

March 21, 1978.

Robert A. Echard, of Patterson, Phillips, Gridley & Echard, Ogden, for plaintiff and appellant.

Raymond M. Berry and Kim R. Wilson, A. W. Sandack, of Sandack & Sandack, Salt Lake City, for defendant and respondent.

ELLETT, Chief Justice:

Sprout, Waldron & Company (not a party to this appeal) was the general contractor to erect a mill, some silos, warehouses, and offices for the owner of land. The defendant, Herm Hughes and Sons, Inc. (hereafter referred to as Hughes), was an independent sub-contractor who contracted to construct a warehouse and other smaller rooms for the general contractor. Hughes contracted with Mark Hayes Masonry (hereafter referred to as Hayes) to construct the masonry walls in the warehouses and other rooms. The plaintiff, Hinds, was an employee of Hayes; and while performing his work, he was injured by the negligence of an employee of Hughes. There was no written contract between Hughes and Hayes, and the relationship between those two companies has to be gleaned from what the employees of each party did.

The trial court granted summary judgment for the defendant, Hughes, on the basis that the plaintiff was in the employ of Hughes and, therefore, could not recover because of the provisions of our statutes.

U.C.A.1953, 35–1–60 provides that the recovery of workmen's compensation is the exclusive remedy against an employer for injuries occurring on the job. U.C.A.1953, 35–1–42 provides:

\* \* \* \* \* \*

Where any employer procures any work to be done wholly or in part for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, such contractor, and all persons employed by him, and all subcontractors under him, and all persons employed by any such subcontractors, shall be deemed, within the meaning of this section, employees of such original employer. Any person, firm or corporation engaged in the performance of work as an independent contractor shall be deemed an employer within the meaning of this section. The term 'independent contractor,' as herein used, is defined to be any person, association or corporation engaged in the performance of any work for another, who, while so engaged is independent of the employer in all that pertains to the execution of the work, is not subject to the rule or control of the employer, is engaged only in the performance of a definite job or piece of work, and is subordinate to the employer only in effecting a result in accordance with the employer's design.

The trial court could see no conflict in matters of evidence and so he ruled that Hinds was an employee of Hughes and, therefore, his exclusive remedy for his injuries was workmen's compensation insurance. This appeal followed from that summary judgment.

In 1975, U.C.A.1953, 35–1–62 (Chapter 101, Laws of Utah, 1975) was amended to read:

. . . When any injury . . . for which compensation is payable under this title shall have been caused by the wrongful act or neglect of a person other than an employer, officer, agent, or employee of said employer, the injured employee . . . may claim compensation and the injured employee . . . may also have an action for damages against such third person. . . .

For the purposes of this section and notwithstanding the provisions of section 35–1–42, the injured employee or his heirs or personal representative may also maintain an action for damages against subcontractors, general contractors, independent contractors, property owners or their lessees or assigns, not occupying an employee-employer relationship with the injured or deceased employee at the time of his injury or death.

This amendment enables an employee to sue a tortfeasor, not his employer (or the employer's agent, etc.), even though the injured person and the tortfeasor may be engaged in the same employment.

The question that we are required to determine is whether or not Hughes was a statutory employer of Hinds at the time of the accident. The written contract between the landowner and the prime contractor contained this provision:

Sub-Contractor shall be an independent contractor with respect to the work to be performed hereunder. Neither Sub-Contractor nor its Sub-Contractors, nor the employees of either, shall be deemed to be the servants, employees or agents of Prime Contractor. Sub-Contractor shall have complete control over the details of the work and the manner in which the work is to be accomplished and shall follow the desire of the Prime Contractor only as to the result to be achieved.

This provision may not be the actual agreement between Hughes and Hayes, but it indicates the intent of the landowner that all work not to be done by the prime contractor was to be done by independent subcontractors.

Whether or not Hughes was the statutory employer of Hinds would depend on whether or not he or his employees had the *right to control* the work done by Hinds, not that they *actually did control* that work.[1]

The job foreman for Hayes, Thomas R. Thomas, gave his deposition and stated therein that Ray Jones, the construction superintendent for Hughes, was present. Jones gave instructions to make sure the "rebar" would get placed where it belonged

---

1. *Bambrough v. Bethers*, Utah, 552 P.2d 1286 (1976).

and to see that the bricklayers were doing the job the way it was supposed to be done. He also testified that Jones had authority to give directions to the bricklayers with regard as to how they did the work and he (Jones) could do that even when he (Thomas) was absent from the job.

He further testified that Jones had authority to direct which part of the building Hayes' men should work on during any given day; and that Jones had the authority to suspend their work on any given day. Mr. Thomas further testified that Jones had authority to go ahead and direct the men who worked under him (Thomas).

Ron Thomas, a hod carrier for Hayes, testified in his deposition that Ray Jones did not give any specific instructions on how to do his work; and that when Tom Thomas (job foreman for Hayes) was not on the job, no one was left in charge. He also testified that Ray Jones would not take charge of the crew.

There appears to be a conflict in the evidence as to the role played by the construction foreman of Hughes. Since Mr. Hinds' right to recover in this case depends upon his showing that Hughes did not have any right to control the work of the Hayes employees, it would seem that a trial of the issues would be necessary inasmuch as there is a conflict in the evidence on a material issue of fact.

We do not search the record to reverse a trial court;[2] yet, we are compelled to note that while both parties make reference to the depositions in the file, none of those depositions have been opened. They remain sealed. It could be that the parties placed copies of the depositions before the trial judge, but we don't know that. We think a trial will be required in order to ascertain whether or not Hayes was an independent contractor whose employees were not subject to the control of Hughes.

The judgment is reversed and the case remanded for a trial upon the issues. Costs are awarded to the appellant.

CROCKETT and HALL, JJ., concur.

WILKINS, Justice (dissenting).

I respectfully dissent.

All statutory references are to Utah Code Ann., 1953, unless otherwise indicated.

In the main opinion, this Court reverses the District Court and remands in order to determine whether Hayes, the employer of plaintiff, was an independent contractor whose employees were not subject to the right of control by defendant. I would concur that there is conflict on a material issue of fact concerning the matter of right of control by defendant and therefore summary judgment on this point cannot be sustained except for matters discussed infra.

But the resolution of the question for which this Court now remands does not decide the critical issue in this action, viz., whether defendant is immune from action against it in this case assuming that defendant is not an independent contractor, i. e., assuming that defendant is a statutory employer of plaintiff.[1]

This Court recognized the purpose of the 1975 amendments to Sec. 35–1–62 in its majority opinion in *Shupe v. Wasatch Electric Company, Inc.*, Utah, 546 P.2d 896,[2] where a wrongful death action was brought by the wife and daughters of a deceased employee of the general contractor against the electrical subcontractor, by stating:

> The legislature, undoubtedly being aware of the decision of this court construing the terms "same employment" in 1975 amended Section 35–1–62, U.C.A. 1953, by adding the following provision:

2. *Anderson v. Gousset*, 60 Ill.App.2d 309, 208 N.E.2d 37 (Ill.App.1965); *Limb v. Federated Milk*, 23 Utah 2d 222, 461 P.2d 290 (1969).

1. The amicus brief of the Utah State AFL–CIO is compellingly sensitive and scholarly concerning this major issue.

2. It is interesting and not insignificant, I believe, to note that the minority opinion in *Shupe* would have allowed the plaintiffs therein to remain "in court" notwithstanding the majority's holding of the inapplicability of the 1975 amendments to Sec. 35–1–62.

"For the purposes of this section and notwithstanding the provisions of Section 35–1–42, the injured employee or his heirs or personal representative may also maintain an action for damages against subcontractors, general contractors, independent contractors, property owners or their lessees or assigns, not occupying an employee-employer relationship with the injured or deceased employee at the time of his injury or death."

The amendment if applicable would leave the plaintiffs in court.

Because the plaintiff's cause of action arose before the 1975 amendments, the majority opinion held *retroactive* application would not however be applied against the subcontractor. Of course, the amendments are unquestionably applicable in this matter.

An analysis and review—in brief—of the historical development of the workmen's compensation legislation and case law thereunto appertaining are not only aidful but vital in resolving what I perceive to be the crucial issue in this case.

Under Utah's original Workmen's Compensation Act,[3] a no-fault system was inaugurated to guarantee an employee some financial compensation for injuries incurred by him in the scope of his employment without burdening him with the uncertain and expensive task of his establishing negligence on the part of his employer. That system did not however prevent him from pursuing traditional common law remedies against anyone not his employer or co-employees for wrongful acts causing those injuries. He was given an option to claim compensation or pursue an action against the third-party tortfeasor.

Later, the law was changed, allowing the employer of the injured employee or the former's insurance carrier to pursue a civil action if the employee decided to accept workmen's compensation.[4] Then in 1945[5] that section was amended to permit the injured employee to pursue both his claim for compensation as well as an action against "another person not in the same employment." As illustrative of "same employment" this Court stated:[6]

. . . [t]he term "same employment" as set out in our Workmen's Compensation Act should be given the meaning which had been attached to it under the cases decided up to that time.

Prior to the enactment of the Workmen's Compensation Act, an employee could not sue his employer for injuries resulting from the negligent acts of a fellow servant. In determining what constituted fellow servants, the courts were in practical uniformity in holding that unless they were engaged in the same employment at the same time, they were not fellow servants so as to prevent an action against their common employer. If they were employed in separate departments of the same enterprise, they were not considered fellow servants unless their work was so related that they were likely to be in such proximity to one another that some special risk could be anticipated towards one if the other were negligent. 493 P.2d at 999.

Early workmen's compensation acts did not precisely define who was an employer.[7] This Court, though, used the touchstone of common law principles defining the master-servant relationship in aid of this definition and suggested the guidelines of who was responsible for employment and discharge of the servant, who paid his wages and controlled him as well as whose work he did.[8]

Remedial legislation was needed and secured in this state and generally elsewhere

**3.** Laws of Utah, 1917, Chapter 100, Sec. 72.

**4.** Utah Code Ann., 1943, Sec. 42–1–58.

**5.** Utah Code Ann., 1953, Sec. 35–1–62 reflects this change.

**6.** *Peterson v. Fowler*, 27 Utah 2d 159, 493 P.2d 997 (1972).

**7.** See Laws of. Utah, 1917, Chapter 100, Sections 50 and 51.

**8.** See *Murray v. Wasatch Grading Co.*, 73 Utah 430, 274 P. 940 (1929) and *Weber County-Ogden City Relief Committee v. Industrial Comm.*, 93 Utah 85, 71 P.2d 177 (1937).

to correct a problem triggered by a strict adherence to master-servant principles. This strictness tended to subvert the protection offered by workmen's compensation by relieving primary contractors of responsibility to insure their workers if these contractors delineated their subcontractors as independent contractors, who then hired the workers. Often—when these facts unfolded—the worker could not successfully pursue compensation against the primary contractor because a master-servant relationship did not strictly obtain and the independent contractor had secured no insurance and was judgment proof. Hence, the concept of "statutory" employer was adopted. This Court noted[9] that the purpose of this corrective legislation was:

> . . . to protect employees of minor contractors against the possible irresponsibility of their immediate employers, by making the principal employer, who has general control of the business in hand, liable as if he had directly employed all who work upon any part of the business which he has undertaken.

Though the status of independent contractors was not abolished, it was retained in circumstances more consonant with the actual state of affairs[10] than formerly.

Yet the inclusion of statutory employer into law—adopted to expand protection to workers—had the ironic effect of providing a conduit by which the rights of an injured worker to pursue civil third-party actions against an employer not in immediate adjacency to him under Sec. 35–1–62 were restricted.[11]

The 1975 amendments to Sec. 35–1–62 are of enormous significance. They are a direct response to prior statutory law on workmen's compensation and this Court's interpretation thereof. These amendments are underlined in the relevant portion of Sec. 35–1–62, which now provides:

> When any injury or death for which compensation is payable under this title shall have been caused by the wrongful act or neglect of a person *other than an employer, officer, agent, or employee of said employer*, the injured employee, or in case of death his dependents, may claim compensation and the injured employee or his heirs or personal representative may also have an action for damages against such third person. If compensation is claimed and the employer or insurance carrier becomes obligated to pay compensation, the employer or insurance carrier shall become trustee of the cause of action against the third party and may bring and maintain the action either in its own name or in the name of the injured employee, or his heirs or the personal representative of the deceased, provided the employer or carrier may not settle and release the cause of action without the consent of the commission. *Before proceeding against the third party, the injured employee, or, in case of death, his heirs, shall give written notice of such intention to the carrier or other person obligated for the compensation payments, in order to give such person a reasonable opportunity to enter an appearance in the proceeding.*
>
> *For the purposes of this section and notwithstanding the provisions of section 35–1–42, the injured employee or his heirs or personal representative may also maintain an action for damages against subcontractors, general contractors, independent contractors, property owners or their lessees or assigns, not occupying an employee-employer relationship with the injured or deceased employee at the time of his injury or death.* [Emphasis added.]

The amendment which states "other than an employer, officer, agent or employee of said employer" is a substitute for the pre-1975 language of "not in the same employment"; and the last paragraph noted above was *added* to this section. The interpreta-

---

**9.** *Lee v. Chevron Oil Co.*, Utah, 565 P.2d 1128, 1130 (1977).

**10.** Sec. 35–1–42.

**11.** See *Smith v. Alfred Brown Co.*, 27 Utah 2d 155, 493 P.2d 994 (1972) and *Adamson v. Oakland Construction Co.*, 29 Utah 2d 286, 508 P.2d 805 (1973).

tion by this Court to the phrase "same employment" in Sec. 35–1–62 was that any person who was a statutory employee of the contractor, as defined in Sec. 35–1–42, was in the same employment as all other statutory employees of such contractor, regardless of the nature of work being performed. The 1975 amendment of "employer, officer, agent or employee of such employer" was inserted to define those persons who then and thenceforward would be immune from third-party civil actions and is a manifestation of legislative intent to eliminate from immunity those persons who fell under the umbrella of statutory employer prior to the amendment. And as further evidence of this intent, the Legislature added the paragraph which begins with "For purposes of this section and *notwithstanding* the provisions of section 35–1–42 . . . ." (Emphasis added.)

Because of these amendments, the only persons who now enjoy immunity from civil action should be the direct and actual employer (and, of course, his officers, agents, and employees) of the injured workman.

The respondent asserts, as an additional ground for affirming the judgment, that a statutory employer is entitled to immunity from suit because he might become liable secondarily for the benefits of workmen's compensation if his worker's actual employer fails to provide coverage for the latter's employees.

First, there is no language in Utah's Workmen's Compensation Act extending this immunity to those who might be secondarily liable. And the interpretation which I have suggested in this opinion would disallow such an extension.

Second, the majority of jurisdictions—and from which, I believe, the better reasoned opinions emanate—hold that contingent liability by a statutory employer is an insufficient basis to allow immunity to that employer from third-party actions by injured workmen.[12]

I would reverse and remand for a trial on the issues.

MAUGHAN, J., concurs in the views expressed in the dissenting opinion of WILKINS, J.

---

**12.** See, e. g. *Colon Nunez v. Horn-Linie,* 423 F.2d 952 (1st Cir., 1970); *Fonseca v. Pacific Construction Co., Ltd.,* 54 Haw. 578, 513 P.2d 156 (1973); *Lindler v. District of Columbia,* 164 U.S.App.D.C. 35, 502 F.2d 495 (1974).