**PINTER CONSTRUCTION COMPANY and the State Insurance Fund, Plaintiffs,**

v.

**Clifford P. FRISBY and the Industrial Commission of Utah, Defendants.**

No. 18432.

Supreme Court of Utah.

Feb. 7, 1984.

**19.** *State Farm Mutual Insurance Co. v. Farmers Insurance Exchange,* 27 Utah 2d 166, 493 P.2d 1002, 1003 (1972).

**20.** *Id.*

**21.** 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932).

**22.** *Supra* n. 19.

Timothy C. Houpt, Salt Lake City, for plaintiffs.

David L. Wilkinson, Atty. Gen., Frank V. Nelson, Asst. Atty. Gen., Salt Lake City, David S. Kunz, James D. Vilos, Ogden, for defendants.

STEWART, Justice:

The plaintiffs, Joe Pinter Construction Company and the State Insurance Fund, seek reversal of an Industrial Commission order directing them to pay worker's compensation benefits to Clifford Frisby, the defendant, who was injured while constructing a metal building for Pinter. Pinter and the Insurance Fund claim that the Commission erred in ruling that Pinter Construction Company exercised the degree of control over Frisby necessary to make Frisby an employee rather than an independent contractor.

In April, 1979, Pinter Construction agreed to build a maintenance building for Heber Light and Power. The proposal was written on a Pinter Construction Company form which contained the following typed provision:

All material is guaranteed to be as specified. All work to be completed in a workmanlike manner according to standard practices. Any alterations or deviation from specifications below involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents or delays beyond our control. Owner to carry fire, tornado and other necessary insurance. *Our workers are fully covered by Workmen's Compensation insurance.* [Emphasis supplied.]

After receiving a bid from Frisby, Pinter hired Frisby to perform the metal erection portion of the job since Pinter had little experience with metal buildings. Frisby and Pinter entered into an oral agreement which provided that Pinter would pay 10 percent of the total price prior to commencement of the work in order for Frisby to purchase the needed materials. The remainder of the total $25,000 was paid in two lump sums. Pinter and Frisby made no agreements regarding the hiring or paying of any of Frisby's employees and there is no evidence of any agreement on a completion date, although Pinter estimated the total job would take forty days.

While installing metal siding, Frisby fell from a twelve-foot scaffold, severely injuring himself. He is now a quadriplegic. After the accident, Frisby applied to the Industrial Commission for a hearing to determine his entitlement to worker's compensation benefits. The Industrial Commission held that Frisby was entitled to benefits because he was an employee of Pinter. We affirm.

I.

The Workmen's Compensation Act is to be construed liberally to further the

statutory purposes of providing relief from injuries caused by industrial accidents. *Maryland Casualty Co. v. Industrial Commission*, 12 Utah 2d 223, 225, 364 P.2d 1020, 1022 (1961). The Industrial Commission is in the first instance responsible for effectuating the purposes of the Act by construing its provisions to secure its humane objectives.

In reviewing an Industrial Commission order, this Court may only set aside an order if (1) "the commission acted without or in excess of its powers" or (2) "the findings of fact do not support the award." U.C.A., 1953, § 35–1–84. We must sustain an order unless it is unsupported by any substantial credible evidence and is therefore arbitrary and capricious. *McPhie v. Industrial Commission*, Utah, 567 P.2d 153 (1977); *Rustler Lodge v. Industrial Commission*, Utah, 562 P.2d 227 (1977); *Harry L. Young & Sons v. Ashton*, Utah, 538 P.2d 316 (1975); *Maryland Casualty Co. v. Industrial Commission*, 12 Utah 2d 223, 364 P.2d 1020 (1961). Furthermore, as to questions of mixed law and fact, the Court "will not substitute its judgment for that of the agency as long as the commission's interpretation has 'warrant in the record' and a reasonable basis in the law." *Salt Lake City Corp. v. Department of Employment Security*, Utah, 657 P.2d 1312, 1316 (1982).[1]

## II.

■ The question on appeal is whether Frisby was a statutory "employee" as that term is used in § 35–1–42(2), which states in relevant part:

Where any employer procures any work to be done wholly or in part for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business

of the employer, such contractor, and all persons *employed by him, and all subcontractors under him, and all persons employed by any such subcontractors, shall be deemed, within the meaning of this section, employees of such original employer.* [Emphasis supplied.]

Thus, if an employer hires a contractor, that contractor, his employees, and all subcontractors under him are "employees" if (1) the employer controls or supervises the contractor's work, and (2) such work is a part or process in the employer's trade or business.

The above-quoted language from § 35–1–42 is used in a class of statutes known as "statutory employer" or "contractor under" statutes. Most states have such statutes, the purpose of which is

to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, who has it within his power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation protection for their workers.

1C A. Larson, *Workmen's Compensation Law*, § 49.11 at 9–12 (1982). *Accord Lee v. Chevron Oil Co.*, Utah, 565 P.2d 1128 (1977).

An additional purpose of the statutory provision is to prevent an unscrupulous principal contractor who contracts out all or most of his work from avoiding responsibility for insuring his subcontractors. Professor Larson states:

The statute also aims to forestall evasion of the act by those who might be tempted to subdivide their regular operations among subcontractors, thus escaping direct employment relations with the workers and relegating them for compensation protection to small contractors

---

1. In *Utah Dept. of Admin. Services v. Pub. Serv. Comm'n*, Utah, 658 P.2d 601, 608–10 (1983), the Court stated that in questions of general law, this Court will correct errors without deference to the Public Service Commission; but that deference is appropriate when construing statutory terms which are intended to be interpreted in light of agency expertise. *Utah Dept. of Admin.*

*Services v. Pub. Serv. Commission* cites *McPhie v. Indus. Comm'n*, Utah, 567 P.2d 153 (1977), a workmen's compensation case in which we stated, "[t]he time honored rule of law is that the construction of statutes by governmental agencies charged with their adminsitration should be given considerable weight." *Id.* at 155.

who fail to carry ... compensation insurance.

A. Larson, *supra*, § 49.11 at 9–14 to 9–16 (footnotes omitted).

Other courts in states with similar provisions have indicated that the provisions are intended to expand liability to those who may not qualify as a common law employee. The Arizona Supreme Court, in interpreting provisions almost identical to Utah's,[2] has stated:

> [This section] is a legislatively created scheme by which conceded non-employees are deliberately brought within the coverage of the [Workmen's Compensation] Act.

*Young v. Environmental Air Products*, 136 Ariz. 158, 665 P.2d 40, 43 (1983). *Accord* 1C A. Larson, *Workmen's Compensation Law*, § 49.00 (1982). *See also Word v. Motorola, Inc.*, 135 Ariz. 517, 662 P.2d 1024 (1983); *Basturo v. Utah Construction & Mining Co.*, 15 Ariz.App. 35, 485 P.2d 859 (1971). As Wisconsin recognized in interpreting statutory provisions similar to Utah's, *see* Wis.Stat. § 108.02(3)(a) & (b) (1975), it is possible for an individual to be an "independent contractor" in a common law sense, and yet be a "statutory employee" for workmen's compensation purposes:

> It is apparent that the statutory concept of the employment relation includes individuals who were independent contractors at common law. The entire statutory scheme indicates a desire on the part of the legislature to extend the protection of these laws to those who might not be deemed employees under the legal concepts governing the liability of a master for the tortious acts of his servant.

*Price County Telephone Co. v. Lord*, 47 Wis.2d 704, 715–16, 177 N.W.2d 904, 910 (1970) (footnotes omitted). *Accord Sears, Roebuck and Co. v. Department of Industry, Labor and Human Relations*, 90 Wis.2d 736, 749–50, 280 N.W.2d 240, 243 (1979); *Moorman Manufacturing Co. v. Industrial Commission*, 241 Wis. 200, 203, 5 N.W.2d 743, 744 (1942).

In the instant case, the Commission specifically found:

> The employer [Pinter] exercised sufficient control over the applicant [Frisby] to create an employer-employee relationship consistent with the Worker's Compensation Act. Additionally, no contractual evidence was presented that would indicate that the Applicant was held responsible for securing his own compensation coverage. It is therefore concluded that the Applicant was an employee as contemplated by the Act ....

A number of facts support the Commission's determination that Pinter exercised "sufficient control" for the purposes of § 35-1-42. Pinter and Frisby did not enter into a written contract; and their agreement was oral and informal, without specifications for the details involved in the work. The informality of the arrangement suggests that Pinter expected to have sufficient control over the work to make certain that the work was performed to his satisfaction. Customarily, general contractors obtain written contracts with independent contractors in order to clarify payment, duties, and other details since a general contractor does not have control over an independent contractor.

■ Pinter's control over Frisby was evidenced on at least four occasions when

---

**2.** Those provisions are Ariz.Rev.Stat.Ann. § 23-902(B) & (C) (1983), which state:

> B. When an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, then such contractors and the persons employed by him, and his sub-contractor and persons employed by the sub-contractor, are, within the meaning of this section, employees of the original employer.
>
> C. A person engaged in work for another, and who while so engaged is independent of the employer in the execution of the work and not subject to the rule or control of the person for whom the work is done, but is engaged only in the performance of a definite job or piece of work, and is subordinate to the employer only in effecting a result in accordance with the employer's design, is an independent contractor, and an employer within the meaning of this section.

Pinter directed Frisby to get on with the work and expressed concern about the deadline for finishing the job. Pinter's assertion of some control over Frisby's activities indicates that Pinter in fact had the right to control and could have done so frequently. It is not the *actual* exercise of control that determines whether an employer-employee relationship exists; *it is the right* to control that is determinative. *Hinds v. Herm Hughes & Sons, Inc.,* Utah, 577 P.2d 561 (1978); *Bambrough v. Bethers,* Utah, 552 P.2d 1286 (1976); *Smith v. Alfred Brown Co.,* 27 Utah 2d 155, 493 P.2d 994 (1972). Pinter also maintained some control over the materials used on the job since Frisby could acquire the materials only after receiving payment from Pinter.

■ As stated, Arizona's workmen's compensation law is almost identical to Utah's.[3] In defining a "statutory employee" under a comparable statutory provision as the one at issue here, the Arizona courts have found the requisite control required by the statute on facts not essentially different from those here. *See Hughes v. Industrial Commission,* 27 Ariz.App. 152 551 P.2d 962 (1976); *Nochta v. Industrial Commission,* 7 Ariz.App. 166, 436 P.2d 944 (1968). In *Nochta, supra,* the appellate court stated:

> The evidence is clear in the instant case that the respondent construction company exercised that degree of control over the job to be performed by the petitioner sufficient to bring petitioner within the meaning of § 23–902, subsec. B. They provided the material that he was to use; the job superintendent together with the architect made inspections of the job and there were consultations; but the final and exclusive control of the job was vested in the job superintendent. The fact that petitioner was knowledgeable and trusted in his field does not lessen the ultimate control over the job by the job superintendent.

7 Ariz.App. at 169–70, 436 P.2d at 947–48. In the instant case, Pinter was no less a "job superintendent" in overseeing the

work than in *Nochta,* and Frisby's experience in the field of metal construction did not lessen Pinter's ultimate control of the job.

The evidence also demonstrates that the task Frisby agreed to complete was a "part or process in [Pinter's] trade or business," § 35–1–42(2). That phrase includes "those operations which entered directly into the successful performance of the commercial function of the principal employer." *Lee v. Chevron Oil Co.,* Utah, 565 P.2d 1128, 1131 (1977), *quoting King v. Palmer,* 129 Conn. 636, 640, 30 A.2d 549, 552 (1943), and covers "all situations in which the subcontracted work is such a part of the constructive employer's regular business operation as he would ordinarily accomplish with his own employees." *Lee v. Chevon Oil Co., supra,* at 1131. *Accord* 1C A. Larson, *Workmen's Compensation Law* § 49.12 at 9–22 (1983). *See also Adamson v. Okland Construction Co.,* 29 Utah 2d 286, 508 P.2d 805 (1973); *Smith v. Alfred Brown Co., supra.*

In addition, Pinter's contract with Heber Power & Light obligated Pinter to provide workers' compensation to all its "workers." That agreement is consistent with Pinter's being a "statutory employer," who is responsible for providing insurance coverage for his subcontractors. Although the Commission does not directly address the contract in its findings, it does state that *"no* contractual evidence was presented that would indicate that [*Frisby*] was held responsible for securing his own compensation coverage."

The instant case is somewhat unusual, because Frisby was both the owner and employee of the subcontracting company. Even so, the purpose of the statute includes Pinter, who as the principal contractor was in a position to insist that Frisby's company provide workmen's compensation insurance on all its employees. Based on the contractual language referred to, it appears that Pinter did in fact undertake that responsibility.

---

3. *See* note 2, *supra.*

On the facts and law of this case, the Commission's decision has warrant in the record and a reasonable basis in the law. *Utah Department of Administrative Services v. Public Service Commission,* Utah, 658 P.2d 601 (1983); *Salt Lake City Corp. v. Department of Employment Security,* Utah, 657 P.2d 1312, 1317 (1982). *See also McPhie v. Industrial Commission,* Utah, 567 P.2d 153 (1977).

Affirmed.

OAKS and DURHAM, JJ., concur.

HALL, Chief Justice (dissenting):

I dissent for the reason that the findings of the Commission are without any substantial evidence to support them.

The standard of review in this case is as was recently stated in *Kaiser Steel Corp. v. Monfredi:* [1]

> [T]he reviewing court's inquiry is whether the Commission's findings are "arbitrary and capricious," or "wholly without cause" or contrary to the "one [inevitable] conclusion from the evidence" or without "any substantial evidence" to support them. Only then should the Commission's findings be displaced.

(Bracketed language in original.)

U.C.A., 1953, § 35-1-43 defines a so-called "statutory employee" as a contractor who performs work over which the employer retains supervision and control and defines an independent contractor as one who performs work not subject to the rule or control of the employer.

In the instant case, the informality of the oral agreement between the parties does not reasonably support an inference that Pinter thereby retained the degree of supervision and control necessary to make Frisby a statutory employee. In fact, the terms of the contract dictate the "one [inevitable] conclusion" [2] that the agreement of the parties established an independent contractor relationship. This is to be seen in that Frisby plainly and unequivocally agreed to construct the building over a period of some forty days, for which Pinter agreed to pay the lump sum of $25,000 without any employee deductions of any kind. The agreement provided for nothing more and nothing less.

The fact that Pinter advanced 10 percent of the total contract price in order to finance Frisby's purchase of the building materials also does not give rise to any reasonable inference that the parties established other than an independent contractor relationship. If Frisby was in fact an employer, reason would dictate that he would have been placed on the payroll as an employee and Pinter, not Frisby, would have purchased and furnished the materials necessary to construct the building.

The fact that Pinter expressed concern that Frisby would not meet the construction deadline if he did not leave his other ongoing job of building a horse arena and get back on the Pinter job, certainly does not reflect the degree of control that accompanies an employer-employee relationship. It simply reflects the natural concern and contract right Pinter had to insist that the work contracted for be completed in a timely manner.

The majority also opines that because Pinter had a contractual obligation to Heber Light and Power to provide workmen's compensation to all workers, Frisby is entitled to coverage. However, irrespective of his contract with Heber Light and Power, Pinter had a statutory duty to provide coverage to employees. What is at issue here is not whether Pinter had a duty to provide coverage to employees, but rather, whether Frisby was in fact an employee. It can only be concluded that he was not.

Frisby performed and was treated in all respects as an independent contractor. He agreed to complete the construction of a building within a designated time; he was paid in a lump sum, rather than by the hour, and without any of the mandatory payroll deductions applicable to employees; and he in turn hired and paid others to

**1.** Utah, 631 P.2d 888, 890 (1981).

**2.** *Id.*

assist him in the construction of the building, all without the supervision and control of Pinter.

I would vacate the order of the Commission.

HOWE, J., concurs in the dissenting opinion of HALL, C.J.