**Glenn L. LAMB, Plaintiff,**

v.

**W–ENERGY, INC., et al., Defendants.**

**Civ. No. C85–156G.**

United States District Court,
D. Utah, C.D.

May 29, 1987.

David J. Jordan, Salt Lake City, Utah, for plaintiff.

Kent H. Murdock and Thomas L. Kay, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came on for hearing on March 9, 1987, on cross motions for summary judgment[1] regarding the status of defendants as statutory employers of plaintiff. Plaintiff was represented by David J. Jordan and defendants Texas Gas Exploration Corp. ("Texas Gas") and ANR Limited, Inc. ("ANR") were represented by Kent H. Murdock and Thomas L. Kay. Defendants W–Energy, Inc. ("W–Energy") and Forcenergy, Inc. ("Forcenergy") were represented by Dennis Ferguson. Defendant Convest Energy Corp. ("Convest") was represented by Robert K. Hilder. Defendant Lehndorff/LGB Minerals, Inc. ("Lehndorff") was represented by Stephen G. Morgan. Plaintiff and defendant Texas Gas submitted memorandums of law and the court heard oral argument, after which the matter was taken under advisement. All of the defendants joined in the memorandum of law and oral argument of defendant Texas Gas. The court now being fully advised sets forth its Memorandum Decision and Order.

## BACKGROUND

*In General*

Utex Oil Co. ("Utex") and defendants Texas Gas, ANR, W–Energy, Forcenergy, Convest, and Lehndorff are joint owners of interests in oil and gas leases covering 193,000 acres in Duchesne and Uintah Counties, Utah. Each of the defendants have entered into various agreements to sell gas, but gas produced from the fields owned by the parties contains an amount of liquifiable hydrocarbons that is unac-

---

1. Plaintiff's cross motion was filed after the motion cutoff date as set by the court and has been objected to be defendants as untimely. In plaintiff's response to those objections plaintiff points out that defendants' motion was filed on the last day for filing motions and that plaintiff's cross motion is based upon the same legal issues and facts. In the interest of judicial economy, this court will consider plaintiff's motion as properly presented.

ceptable to gas purchasers. To solve this problem the above energy companies provided for construction of a gas processing plant located in Altamont, Utah to be operated as a "mutually profitable venture" for the purpose of extracting liquid hydrocarbons. Operation of the plant is governed by an agreement among the energy companies entitled "Agreement For the Construction, Ownership and Operation of the Altamont Processing Plant" ("Operating Agreement") in which Utex is designated as the Plant Operator. Plaintiff, Glen Lamb, was a mechanic in the employ of Utex on February 2, 1985 when an explosion occurred at the Altamont Plant resulting in plaintiff being severely burned. Plaintiff alleges that a similar explosion occurred in the same building of the plant in August 1984, and that defendants' failure to prevent the second explosion constituted negligence.

2. At paragraph 10.1 of Article X, entitled "Appointment and Exclusive Right of Plant Operation," Utex is appointed to operate the plant subject to other provisions of Article X and subject to "decisions, determinations and authorizations" that according to Article XI of the contract require a vote by the plant owners. Paragraph 10.2, "Conducting Operations," further provides:

> Plant Operator shall direct the operation, maintenance, alteration or enlargement of the plant, and conduct all operations hereunder in a good and workmanlike manner and, in the absence of specific instructions from the Plant Owners or their representatives, voting as prescribed in Article XI, shall have the *right and duty to act in accordance with its best judgment of what a prudent operator would do under the same or similar circumstances....* Plant Operator shall consult freely with Plant Owners and shall keep them informed of all matters arising during the operation, maintenance, alteration or enlargement of the Plant which Plant Operator, in the exercise of its best judgment, considers important. Any Plant Owner shall have the right, at its own risk and expense, to observe the operation of the Plant.

(Emphasis added.) Paragraph 10.3, "Particular Duties of Plant Operator," sets forth twelve subparagraphs which contain specific responsibilities of the Plant Operator: (1) the Plant Operator shall contract for construction of or enlargement to the Plant; (2) *direct all operations* for the extraction, separation and delivery of liquid hydrocarbons; (3) receive the gas to be processed; (4) direct the purchase and *use of all materials and supplies;* (5) promptly *pay and discharge all costs and expenses;* (6) *pay wages*

*Operating Agreement*

The specific rights and duties of Utex as operator of the Altamont plant are set forth in the Operating Agreement at Article X entitled, "Appointment and Responsibilities of Plant Operator." That article makes it plain that the owners delegate to Utex as the operator all day to day duties of operation of the plant as well as specific supervisory authority over plant employees.[2] However, under the agreement the operator is expressly subject to "specific instructions from the Plant Owners or their representatives" and is subject to replacement by the owners at any time, without cause. The owners retain the right of ultimate control over the Plant Operator and plant operations by majority vote as to various specific matters, including "matters of general policy relating to operation of the Plant."[3] The owners are required

*and salaries of Plant personnel;* (7) keep an itemized monthly record of the account of Plant Owners and report all expenditures and other information to the Plant Owners; (8) furnish a monthly report of operations to each Plant Owner including the volume of gas processed; (9) keep all property free of encumbrances; (10) *abide by all applicable laws;* (11) furnish each Plant Owner with an annual budget and forecast; and (12) *direct all other matters necessary to the full accomplishment of the purpose of the Operating Agreement.* Item 6, at paragraph 10.3.6 provides:

> The number of Plant employees, the selection of such employees, their hours of labor, and the compensation, including employee benefits, to be paid such employees shall be determined by Plant Operator, and all such employees shall be employees of Plant Operator.

(Emphasis added.) The final paragraph of Article X provides that the Plant Operator may be terminated at any time in accordance with the Plant Owner voting provisions.

3. Article XI of the Operating Agreement, entitled "Meetings and Voting," sets forth the limitations or "strings" imposed upon the express delegations contained in Article X. Paragraph 11.4 of Article XI requires a majority vote by the Plant Owners (except in the case of an emergency) with regard to the following items: (1) any single item or expenditure in excess of $50,000; (2) any disposition by the Plant Operator of surplus materials and equipment having a salvage value in excess of $10,000; (3) *matters of general policy relating to operation of the Plant;* (4) any proposal for the Plant Operator to execute a processing agreement with a plant supplier; and (5) amendment to the Operating Agree-

to pay the wages, benefits and workers' compensation insurance premiums under the cost sharing provisions of the Agreement.[4]

## LEGAL ANALYSIS

### I. *Policy Considerations*

Under the Utah's Workers' Compensation statute, the exclusive remedy for an employee in an accident such as occurred here as against his or her employer and the employer's officers, agents, or other employees is to recover whatever benefits are available under the Workers' Compensation Insurance Fund.[5] The underlying policy and purpose of the Workers' Compensation Act that must be taken into account in all cases has been described by the Utah Supreme Court thusly:

> [T]he purpose of the [workers' compensation] act is to provide speedy and certain compensation for workmen and their dependents and to avoid the delay, expense and uncertainty which were involved prior to the act; and the concomitant purpose of protecting the employer from hazards of exorbitant and in some instances ruinous liabilities.

*Adamson v. Okland Const. Co.*, 79 Utah 2d 286, 508 P.2d 805, 807 (1973). Further, the Utah court has consistently stated that the Act is to be liberally construed in favor of those injured in industrial accidents.[6]

The determination of who is considered to be the plaintiff's "employer" is governed by Utah Code Ann. § 35–1–42(2) which provides in part:

> Where any employer procures any work to be done ... by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, such contractor, and all persons employed by him, and all subcontractors under him, and all persons employed by any such subcontractors, shall be deemed, within the meaning of this section, employees of such original employer.

In furtherance of the policy to afford liberal coverage to injured persons, the Supreme Court of Utah in *Pinter Const. Co. v. Frisby*,[7] adopted Professor Larson's policy analysis that the purpose of the "statutory employer" or "contractor under" statute is

> to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, who has it within his power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation protection for their workers.

The Utah Court further noted that

> An additional purpose of the statutory provision is to prevent an unscrupulous principal contractor who contracts out all or most of his work from avoiding responsibility for insuring his subcontractors.

*Pinter* 678 P.2d at 307; *see also Bennett v. Industrial Comm'n*, 726 P.2d 427, 432 (Utah 1986) (reaffirming policy analysis). The policy of the law in such multiple "employer" situations appears to be that the employer or organization closest to the "employee" must be *required* by contract to provide workers' compensation benefits by the general contractor or other subcontractor in immediate privity in the hierarchy. Where such requirement is imposed and met, it follows that others in the hierarchy of possible "employers" should not

---

ment which would require a ninety-five percent voting interest.

**4.** Article XIII.

**5.** Utah Code Ann. § 35–1–60 (1974).

**6.** *See Pinter Const. Co. v. Frisby*, 678 P.2d 305, 306–07 (Utah 1984); *Adamson*, 508 P.2d at 807; *Smith v. Alfred Brown Co.*, 27 Utah 2d 155, 493 P.2d 994, 995 (1972); *Cook v. Peter Kiewit Sons*

*Co.*, 15 Utah 2d 20, 386 P.2d 616, 617 (1963); *Maryland Casualty Co. v. Industrial Commission*, 12 Utah 2d 223, 364 P.2d 1020, 1023 (1961).

**7.** 678 P.2d 305 (Utah 1984) at 307 (quoting 1C A. Larson, *Workmen's Compensation Law*, § 49.11 at 9–12 (1982)); and citing *Lee v. Chevron Oil Co.*, 565 P.2d 1128 (Utah 1977) as being in accord.

be liable for workers' compensation benefits.[8]

The Utah Supreme Court has also established its view with regard to the flip side situation, i.e., when an employee seeks to avoid the establishment of a statutory employee-employer relationship, thereby freeing himself or herself to sue the defendant for damages in addition to or in lieu of workers' compensation. In those circumstances the Utah court has determined that fundamental fairness also requires liberal interpretation of the statute. *Adamson v. Okland Const. Co.*, 29 Utah 2d 286, 508 P.2d 805, 807 (1973); *Smith v. Alfred Brown Co.*, 27 Utah 2d 155, 493 P.2d 994, 995 (1972). That is to say, the same liberal test whereby a person in the position of an "employee" may claim benefits from an "employer" should also be applied to provide a shield of protection for that statutory employer against any asserted liability beyond the discharge of obligations under the Workers' Compensation statute. As a result the same scope and shield of protection exists as to tort actions against deemed statutory employers.[9]

## II. Supervision or Control: Right to Control

The plaintiff in this case does not actively dispute that operation of the Altamont Plant is "a part or process in the trade or business ..." of each of the defendants. Utah Code Ann. § 35–1–42(2). The defendants are in the business of exploring for, producing, processing, storing, transporting and selling oil and gas. The Altamont Plant is therefore an integral part of that business.

The parties agree that the right to control rather than actual exercise of control is the test in determining whether an employer should be classified as a statutory employer of a given employee.[10] Five factors were singled out in *Bennett v. Industrial Comm'n*, 726 P.2d 427, 430 (Utah 1986), as particularly pertinent in determining the right to control:

> For the purposes of this section and notwithstanding the provisions of section 35–1–42, the injured employee or his heirs or personal representative may also maintain an action for damages against subcontractors, general contractors, independent contractors, property owners or their lessees or assigns, not occupying an employee-employer relationship with the injured or deceased employee at the time of his injury or death.

Utah Code Ann. § 35–1–62 (1974). However, the argument that the above statute is less broad in defining a deemed employee-employer relationship for purposes of tort actions than for the purpose of determining liability for workers' compensation benefits has been expressly rejected by the Supreme Court of Utah. The question was put to rest by the Utah court in *Hinds v. Herm Hughes and Sons, Inc.*, 577 P.2d 561, 562–63 (Utah 1978) wherein the court over the dissent of Justice Wilkins ruled that the amendment applies only to suits against tortfeasors who are not employers or deemed to be statutory employers.

**8.** Presumably the following policy analysis by Professor Larson, already adopted in part by the Supreme Court of Utah, would apply as the rationalization to eliminate other potential statutory employers from liability for workers' compensation benefits where the "employer" directly involved has discharged his duty in obtaining workers' compensation insurance:

> This being the rationale of the rule, in the increasingly common situation displaying a hierarchy of principal contractors upon subcontractors upon sub-subcontractors, if an employee of the lowest subcontractor on the totem pole is injured, there is no practical reason for reaching up the hierarchy any further than the first insured contractor.

1C A. Larson, *Workmen's Compensation Law,* § 49.11 at 9–21 (1982).

**9.** In 1975 the Legislature of the State of Utah adopted an amendment which might have been interpreted to permit suits in tort against subcontractors and others deemed to be statutory employers, notwithstanding the "statutory employer" statute. That law provided:

> ... When any injury ... for which compensation is payable under this title shall have been caused by the wrongful act or neglect of a person other than an employer, officer, agent, or employee of said employer, the injured employee ... may claim compensation and the injured employee ... may also have an action for damages against such third person.

. . . . .

**10.** The Supreme Court of Utah in *Pinter* stated: "It is not the *actual* exercise of control that determines whether an employer-employee relationship exists; it is the *right* to control that is determinative." 678 P.2d at 309 (citing *Hinds v. Herm Hughes & Sons, Inc.*, 577 P.2d 561, 562 (Utah 1978); *Bambrough v. Bethers*, 552 P.2d 1286, 1291 (Utah 1976); *Smith v. Alfred Brown Co.*, 27 Utah 2d 155, 493 P.2d 994, 996 (1972)).

Many factors have been applied in determining the right to control. Among those factors are actual supervision of the worker, the extent of the supervision, the method of payment, the furnishing of equipment for the worker, and the right to terminate the worker. *Harry L. Young & Sons, Inc. v. Ashton*, 538 P.2d 316, 318 (Utah 1975). Although these factors are not inclusive, they are relevant in many cases, including this case. In the cited case of *Harry L. Young & Sons, Inc. v. Ashton*, the court stressed four factors as being pertinent in determining the statutory employer status:

> The main facts to be considered as bearing on the relationship here are: (1) whatever covenants or agreements exist concerning the right of direction and control over the employee, whether express or implied; (2) the right to hire and fire; (3) the method of payment, i.e., whether in wages or fees, as compared to payment for a complete job or project; and (4) the furnishing of the equipment.

538 P.2d at 317. Where the intent of the parties is consistent with the conduct of the parties,[11] "the elements of *control by the employer* and the *intent of the parties* are the most important [factors]...." *Rustler Lodge v. Industrial Comm'n*, 562 P.2d 227, 228 (Utah 1977) (quoting *Sutton v. Industrial Comm'n*, 9 Utah 2d 339, 344 P.2d 538, 540 (1959)) (emphasis added).[12]

The parties here differ drastically as to the level of application of the "right to control" test. Plaintiff asserts that the potential statutory employer must have the right to control the details of the work of the injured employee. Defendants assert that it is enough if the right to control exists at the level of the "employer" or organization for whom the injured employee performs the immediate work. Under Utah law the right to control at that level may exist whether the employee works for an independent contractor, a joint venturer or a subcontractor. In this regard, even though Utex as the operator in this case may qualify under familiar tests as an independent contractor, that status is not controlling for purposes of the workers' compensation statute if "sufficient control" over the independent contractor exists.[13] Similarly, where companies operate a joint venture, other things being equal, an employee of one joint venturer is an employee of all joint venturers.[14] Under the general

11. Both plaintiff and defendant urge that the contract as a matter of law establishes or fails to establish the status of defendants as statutory employers of plaintiff. However, plaintiff argues that if isolated provisions of the contract are read as defendants read them, then a question of fact is created with regard to whether the conduct of the parties is consistent with those provisions. This court upon reading the Operating Agreement as a whole does not consider that any ambiguity exists and that the conduct of the parties has been consistent with the terms of the agreement.

12. *See also Desnoyers v. North Am. Resources Co.*, No. 85–C–852W, slip op. at 5 (D. Utah March 13, 1987) (applying the right to control test and noting that although a contract is not conclusive evidence of a legal relationship between the parties, it is cogent evidence of it).

13. After stating that "... it is possible for an individual to be an 'independent contractor' in a common law sense, and yet be a 'statutory employee' for workmen's compensation purposes" the Supreme Court of Utah in *Pinter* found "sufficient control" to exist for a general contractor to be classified as the statutory employer of an independent contractor. The court said:

> The instant case is somewhat unusual, because Frisby was both the owner and employee of the subcontracting company. Even so, the purpose of the statute includes Pinter, who as the principal contractor was in a position to insist that Frisby's company provide workmen's compensation insurance on all its employees. Based on the contractual language referred to, it appears that Pinter did in fact undertake that responsibility.

678 P.2d at 309.

14. In this case the Agreement among defendants recites that all of the owners have arranged for operation of the Altamont Plant as a "mutually profitable venture." Although not so characterized, the arrangement among the owners for operation of the Plant may well qualify as a joint venture. In *Hammer v. Gibbons & Reed Co.*, 28 Utah 2d 415, 510 P.2d 1104 (1973) a joint venture was entered into by three construction companies with each company supplying equipment to the project. The court determined that "[j]oint venturers bear the same relation to each other as do partners in a partnership. Each is an agent of the entity. Here the contract states that one of the purposes of forming the joint venture was to furnish *equipment* to the job." *Id.*, 510 P.2d at 1105. In those circumstances

contractor-subcontractor cases, employees of the subcontractor may be deemed to be statutory employees of the general contractor based upon retention of the right to control work which is a part of process of the general contractor's work.[15] No matter how the relationships may be characterized or cast, however, the essential legal issue presented here is whether "right to control" requires control directly over the employee, or control over the entity for which the employee immediately performs work. Put another way, the question is whether "right to control" applies to the method and manner of the work of the employee, or to the ultimate control over the project.

The Supreme Court of Utah has made it plain that the test to be applied is ultimate control over the *project* and supervision and control over the performance of the *employer or subcontractor*, rather than

direct control over the employee in question. In its most recent pronouncement in *Bennett v. Industrial Comm'n*, 726 P.2d 427, 432 (Utah 1986) (emphasis added), the Utah court said: "... the term 'supervision or control' requires only that the general contractor retain *ultimate control over the project*." The court further explained:

> The power to supervise or control *the ultimate performance of subcontractors* satisfies the requirement that the general contractor retain supervision or control over the subcontractor.

*Id.* (emphasis added). In arriving at this conclusion the court quoted from an Arizona case which stressed ultimate control over the job to be performed [16] and a prior Utah case which had applied the test of "ultimate supervisory control over the entire project" as constituting "sufficient control." [17] Employee status under the com-

---

the defendant in supplying a defective machine to the joint venture acted as an agent for the employer of the plaintiff and therefore was immune from suit. The Utah court reached a similar conclusion in *Cook v. Peter Kiewit Sons Co.*, 15 Utah 2d 20, 386 P.2d 616 (1963). In *Cook* two construction companies joined efforts to construct a diversion tunnel. The Utah court regarded the partnership entity as the employing unit and both companies were considered to be engaged in the same employment. *Id.*, 386 P.2d at 618. However, this court does not mean to imply that the agency which arises from the joint venture as a matter of law to create the employee-employment relation could not be negated under the facts of a particular case.

**15.** In *Bennett* the Supreme Court of Utah marshalled the Utah cases which support the deemed statutory employee-employer concept and stated:

> Under § 35–1–42(2), a *subcontractor's employee* is deemed an employee of the *general contractor* if (1) the general contractor retains some supervision or control over the subcontractor's work, and (2) the work done by the subcontractor is a "part or process in the trade or business of the employer." *E.g., Pinter Construction Co. v. Frisby*, 678 P.2d at 307 (Utah 1984); *Rustler Lodge v. Industrial Commission*, 562 P.2d at 228–29; *Harry L. Young & Sons, Inc. v. Ashton*, 538 P.2d at 318 (1974). 726 P.2d at 431.

**16.** The Arizona court said in *Nochta v. Industrial Commission*, 7 Ariz.App. 166, 436 P.2d 944, 947–48 (1968):

> The evidence is clear in the instant case that the respondent construction company exer-

cised that degree of control over the job to be performed by the petitioner sufficient to bring petitioner within the meaning of § 23–902, subsec. B. They provided the material that he was to use; the job superintendent together with the architect made inspections of the job and there were consultations; but the final and exclusive control of the job was vested in the job superintendent. The fact that petitioner was knowledgeable and trusted in his field does not lessen the ultimate control over the job by the job superintendent.

Quoted in *Bennett*, 726 P.2d at 432. In the later case of *Hunt Building Corp. v. Industrial Comm'n*, 148 Ariz. 102, 713 P.2d 303, 307 (1986) the court applied Arizona's workers' compensation statute, which is derived from the Utah statute and is nearly identical, and concluded that the "right to control" must be over the manner or method of reaching a specific result rather than end result of the work. In *Hunt* the Arizona Supreme Court disagreed with a dissenting opinion by Judge Grant of the Arizona Court of Appeals in which he concluded that Utah caselaw supported the proposition that only the end result need be controlled. *Hunt Building Corp. v. Industrial Comm'n*, 148 Ariz. 96, 713 P.2d 297, 301–03 (Ariz.Ct.App.1985) (Grant, J., dissenting) (citing *Pinter Constr. Co. v. Frisby*, 678 P.2d 305 (Utah 1984) and *Rustler Lodge v. Industrial Comm'n*, 562 P.2d 227 (Utah 1977)). Justice Stewart's subsequent opinion in *Bennett* seemingly puts the matter to rest by making it clear that in Utah the test is right to control the ultimate project.

**17.** *Smith v. Alfred Brown Co.*, 27 Utah 2d 155, 493 P.2d 994, 996. In *Smith* the court found that the general contractor on a major construc-

mon law or by reason of contract was considered to be irrelevant by the court in *Bennett*,[18] and the fact that delegations of power and authority had occurred from a general contractor to a subcontractor was regarded as of no legal consequence so long as the *right to require performance* is retained.[19]

### III. *Ultimate Right to Control in this Case*

It is manifest that under the operating agreement in this case the defendants reserved the power of ultimate control over the project and over Utex as the operator thereof. Accordingly, under the legal standard adopted by the Supreme Court of Utah, we consider that the owners retained "sufficient control" to qualify as statutory employers of plaintiff pursuant to Utah Code Ann. § 35–1–42(2).

Based upon the foregoing, plaintiff's motion for partial summary judgment is denied and defendants' motions are granted. This Memorandum Decision and Order will suffice as the court's final action on this motion; no further Order need be prepared by counsel.

---

tion project at Brigham Young University had sufficient control over the masonry subcontractor on the project to warrant holding the general contractor to be the statutory employer of one of the masonry subcontractor's employees because of its ultimate supervisory control over the entire project. Quoted in *Bennett*, 726 P.2d at 432.

18. The court said:

But the statutory requirement that the general contractor have supervision or control over the work of the subcontractor cannot mean that the subcontractor must also qualify as an employee of the general contractor. That would be at least highly improbable and perhaps impossible by definition.
*Bennett*, 726 P.2d at 432.

19. The court said:

Although the construction process requires the general contractor to delegate to a greater or lesser degree to subcontractors, the general contractor remains responsible for successful completion of the entire project and of necessity retains the right to require that subcontractors perform according to specifications.
*Bennett*, 726 P.2d at 432.